CAMPBELL SOUP COMPANY, APPELLANT-RESPONDENT, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, AND JOHN A. HATTEL, *ET AL.*, RESPONDENTS-APPELLANTS.

Argued October 13, 1953—Decided November 2, 1953.

*Mr. Clarence F. McGovern* argued the cause for appellant Board of Review, Division of Employment Security.

*Mr. Abraham Greenberg* argued the cause for appellants John A. Hattel, *et al.*

*Mr. Grover C. Richman* argued the cause for respondent.

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J.   The primary question here is whether a worker retired on pension at age 65 as required by a collective bargaining agreement has "left work voluntarily without good cause" so as to be disqualified for unemployment compensation under *R. S.* 43:21–5 (*a*) providing that an individual shall be disqualified for benefits "for the week in which he has left work voluntarily without good cause, and for each week thereafter until he has earned in employment  *  *  *  at least four times his weekly benefit rate  *  *  *."

These consolidated cases arise from claims filed by a number of former employees of Campbell Soup Company who

were retired on pension by the company as each attained age 65. Retirement at that age is made compulsory by the terms of a collective bargaining agreement dated March 22, 1950 between the company and Food, Agricultural and Allied Workers Union of America, Local 80. The contract plan supplanted a retirement policy initiated unilaterally by the company in 1938. Pensions at Company expense are provided for such retired employees as have had at least five years of service with the Company.

The Appellate Division, 24 *N. J. Super.* 311 (1953), held that the claimants were disqualified for benefits, concluding that the contract made for the claimants by the union is the claimants' contract and that, "having called for retirement by the company at age 65, the employees made the matter compulsory as to the company and removed it from the realm of involuntariness as to the employees" who are therefore to be considered as having "voluntarily terminated" their employment. The judgment reversed determinations of the Board of Review allowing benefits to claimants Hattel and Pieri, who were found by the board to be otherwise eligible therefor, and sustained the determination disallowing benefits to claimant Attanasio, whom the board found to be ineligible on other grounds. The board considered that a worker otherwise eligible was entitled to benefits and was not barred because his termination resulted from the application of a contract under which his termination was compelled. The board also found as facts in each case that

"The claimant did not want to relinquish his job. He requested that he be allowed to go on working. He was advised by the company, that, in its view, the retirement and pensioning were compulsory under the contract. Without further protest the claimant retired and accepted the pension. He was thereby barred from working for this employer. The union did not protest his pensioning off under the duly established grievance machinery. The claimant sought other employment without success."

We allowed certification from the Appellate Division's judgment upon the board's petition and the cross-petition of the claimants, 12 *N. J.* 350 (1953).

If the inquiry is isolated to the time of termination, plainly none of the claimants left voluntarily in the sense that on his own he willed and intended at the time to leave his job. On the contrary, each claimant resisted his termination and left against his will only upon his employer's insistence that the contract obligation gave neither of them any alternative but to sever the relationship.

We think the leaving was involuntary in the statutory sense.

The act is designed to provide unemployment compensation for workers who ordinarily have been workers and would be workers now but for their inability to find suitable jobs. *Krauss v. A. & M. Karagheusian, Inc.*, 13 *N. J.* 447 (1953). Benefits are allowable only to claimants who satisfy the eligibility tests prescribed by *R. S.* 43 :21–4 and who are not disqualified within any of the provisions of *R. S.* 43 :21–5. But the act recognizes that in a country such as ours workers are always free to change jobs and to seek work of their choice, except perhaps as this freedom may be restricted by governmental regulations in times of national emergency. The act therefore visits no penalty upon the worker who voluntarily quits suitable work if he has good cause for leaving, and only the limited penalty imposed by subsection 5 (*a*) if he leaves without good cause. The Legislature plainly intended that the reach of the subsection was to be limited to separations where the decision whether to go or to stay lay at the time with the worker alone and, even then, to bar him only if he left his work without good cause. The claimants here did not choose of their own volition to leave the employ of Campbell Soup Company when they were separated. They left because they had no alternative but to submit to the employer's retirement policy, however that policy as presently constituted was originated. Their leaving in compliance with the policy was therefore involuntary for the purposes of the statute.

The fact, given controlling effect by the Appellate Division, that the claimants through their agent, the union, voluntarily subscribed to the contract is made unimportant

by this interpretation of subsection 5 (*a*), manifestly required in order to limit its operation within the apparent intention of the Legislature, having in mind, also that the act is to be liberally construed to further its remedial and beneficent purposes. *Ludwigsen v. N. J. Dept. of Labor & Industry*, 12 *N. J.* 64 (1953); *Bergen Point. Iron Works v. Board of Review*, 137 *N. J. L.* 685 (*E. & A.* 1948). In providing relief against the distress suffered by individuals from involuntary unemployment, the statute is designed to serve the general public interest and not alone the interest of the unemployed. *Krauss v. A. & M. Karagheusian, Inc., supra.* "Although relief from the distress of unemployment is the main purpose of the system other purposes have also been attached to it, such as maintaining purchasing power, stabilizing employment, and preserving labor standards." *Altman, Availability for Work* (*Harv. Univ. Press* 1950), *p.* 17. And *R. S.* 43 :21–2 expressly states:

"The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state requires the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed after qualifying periods of employment."

This design to protect and serve the common interest is also evident in *R. S.* 43 :21–15, providing that "Any agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this chapter shall be void." While the treating as voluntary of a worker's leaving at the appointed time pursuant to the contract may not bring the contract within section 15, yet in practical effect the contract operates as an advance surrender of benefits, and an interpretation of subsection 5 (*a*) to embrace such leaving is clearly inconsistent with the attainment of the statutory objectives. If an understanding as to the duration of employment were to have that effect, countless claimants would be disqualified for benefits. Applicants for work very frequently must take jobs which the employers tell them at the time will engage their services for only a stipulated

period. It would not be suggested that voluntary acceptance of such work, knowing in advance its fixed duration, constitutes the leaving of it at the agreed time a voluntary leaving for the purposes of subsection 5 (*a*). The agreement by which the claimants were to leave the employ of Campbell Soup Company at age 65 is equally ineffective for that purpose.

Nor is the result different because the termination agreement also provides a pension for the worker. The statutory scheme for compensating unemployed workers for wage losses makes no provision for an inquiry as to individual financial need. An unemployed individual otherwise entitled to benefits is entitled to them however large or small his means may be. In passing it should be noted that the instant contract provides pensions only for the terminated employees who have had five years of service with the company and that the record discloses that some employees retired under the contract did not meet that requirement and are not receiving pensions.

The briefs also argue the question whether we should sustain the Board of Review's determination declaring Attanasio and other claimants similarly circumstanced ineligible for benefits. The board determined that Attanasio did not satisfy the eligibility requirements of subsection 4 (*c*) providing that it must appear that the claimant is "able to work, is available for work, and has demonstrated that he is actively seeking work." The board found from the evidence that Attanasio, an employee for almost 30 years, "had no skill, aside from common labor, except for that acquired in this particular work," that Campbell Soup Company "has almost a monopoly [in the Camden area] of jobs involving such skill as the claimant possessed," and concluded that "by accepting the pension without protest the claimant voluntarily barred himself from the one possible source of employment in his area" and "made himself virtually unemployable" and therefore "was not available for work."

The crux of the board's determination is that virtually no labor market exists in the Camden area for the

skills Attanasio has to offer. The consideration that Attanasio retired on pension seems properly to have been received as evidence merely of his withdrawal from the labor market which might be overborne by other proofs showing his genuine attachment to the labor market. *Krauss v. A. & M. Karagheusian, Inc., supra.* Such other proofs apparently concerned Attanasio's efforts to find other employment in the Camden area, which are summed up in the board's several opinions as showing that he "actively sought work without unreasonable restrictions," "sought other work," "sought other employment without success." It is reasonably inferrable from the record that the work Attanasio sought was unskilled common labor. His ability to do that work is not in question as, from the board's findings, the work he had been doing was unskilled and akin to common labor and he could have continued doing it. Plainly, if there was a substantial amount of general common labor work in the area, it cannot be said that there was no labor market merely because the particular kind of common labor he had done at Campbell Soup Company was not available with any other employer. The manager of the Camden local office of the New Jersey State Employment Service testified that in the Camden area there were 220 employers each having 30 or more employees and in the aggregate employing 52,000 persons. He testified further that in this market "the unskilled labor is greatly in excess of the skilled labor" and that "That is a continuing condition." The proofs thus establish the existence of a labor market for common labor generally. But the witness also testified that unskilled workers 65 years or older found it "very difficult" to find jobs. This, however, is an inadmissible consideration in the inquiry whether there is a labor market for skills of the type being offered by the claimant. The claimant's age is properly a consideration upon the issue of his availability only as it relates to his ability to work, or is tied to restrictions which materially limit his capacity for employment. The primary determinant of the existence of a labor market is whether there is a market in the geographical area in which the claimant is willing to

work for the services which he is able to perform. *Krauss v. A. & M. Karagheusian, Inc., supra.*

The judgment of the Appellate Division is reversed, and the determinations of the Board of Review allowing benefits in the Hattel and Pieri cases are reinstated. The determination of the Board of Review declaring Attanasio ineligible for benefits is reversed. All cases are remanded to the agency for further proceedings consistent with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, BURLING, JACOBS and BRENNAN—5.

*For affirmance*—Justice OLIPHANT—1.