366 P.2d 84

EMPLOYMENT SECURITY COMMISSION of Arizona, Appellant,

v.

MAGMA COPPER COMPANY, a corporation, Appellee.

No. 7165.

Supreme Court of Arizona.

En Banc.

Nov. 8, 1961.

Robert W. Pickrell, Atty. Gen., Wade Church, former Atty. Gen., and Richard J. Daniels, Asst. Atty. Gen., for appellant.

Guynn, Twitty & Sievwright, and John F. Mills, Phoenix, for appellee.

UDALL, Justice.

This is an appeal from a final order of the Superior Court of Pinal County reversing a determination by the Employment Security Commission that claimants, Francisco Ruiz, Gumercindo Provencio and Jose M. Lugo, were entitled to unemployment insurance benefits pursuant to A.R.S. §§ 23–771 to 23–790 (1956). Presented here is the question whether a worker, forced to retire on pension at age 68 or above at the instance of his employer but according to the provisions of a collective bargaining agreement "has left work voluntarily without good cause in connection with his employment" so as to disqualify himself for benefits to the extent provided in A.R.S. § 23–775(1).[1]

The facts were submitted on an agreed statement to the Superior Court and on review by this court are stipulated to be as follows. Claimants were employed by the Magma Copper Company in the unit for which the International Union of Mine, Mill & Smelter Workers, Independent had been certified by the National Labor Relations Board as bargaining agent in October of 1957. Provencio and Ruiz were members of the Union and Lugo, though not a member, was entitled to belong. In June of 1958 the Company, the Union and its Local No. 938 entered into a collective bargaining agreement providing for, *inter alia*, a pension plan. This plan provided in pertinent part:

"2.1 Retirement on Account of Age

(a) Normal. On or after January 1, 1958, each Employee shall retire from the service of the Employing Company on his normal retirement date, which

---

1. "An individual shall be disqualified for benefits:

"1. For the week in which he has left work voluntarily without good cause in connection with his employment, if so found by the commission, and in addition to the waiting week, for the four weeks which immediately follow such week, and

his maximum benefit amount shall be reduced by an amount equivalent to four times his weekly benefit amount."

For the distinction between ineligibility for and disqualification from benefits see Beaman v. Safeway Stores, 78 Ariz. 195, 199, 277 P.2d 1010, 1012 (1954).

shall be the first day of the month on or next following his 65th birthday; provided, however, that the Employee may postpone his retirement and continue in service up to three (3) years after his normal retirement date if he so desires and if and so long as he is able in the opinion of the Employing Company to perform the work available for him; and provided further that the Employee, upon written request of the Employing Company, may if he so desires, continue in service after his 68th birthday. No employee who retires on account of age shall become a Pensioner unless he has completed fifteen (15) or more years of Continuous Service to his actual retirement date."

The agreement in its entirety was ratified by the members of Local No. 938.

Each of the claimants was over 65 and had worked continuously for the Company for 15 years or more at the time the plan was adopted in June of 1958. And each was requested by the Company to work past his 68th birthday. However, the Company terminated the employment of Ruiz and Provencio on August 31, 1958, and that of Lugo on October 1, 1958. The three were 69, 70 and 72 respectively at the time of their retirement. When so retired by the Company they "applied for unemployment benefits and social security benefits in addition to benefits under the negotiated pension plan. Each of the three claimants stated that he would have desired to remain in the employ of the Company."

The Employment Security Commission in affirming the findings of its Appeal Tribunal decided that:

"1. * * * The claimants separated from employment under nondisqualifying circumstances.

"2. The employer's experience rating account shall be subject to charges for benefits subsequently paid."

On appeal the Commission's two assignments of error are that the Superior Court erred in reversing the above two findings. The Commission argues (1) that under the agreement the employer Company had the option of continuing to hire or discharge the employees and therefore, ipso facto, the claimants were involuntarily unemployed, and (2) that the collective bargaining contract, if construed as a binding agreement by claimants to be voluntarily unemployed in the future, either at a designated age or at the wish of the employer, would violate A.R.S. § 23–784 which provides:

"No agreement by an individual to waive, release or commute his rights to benefits or any other rights under this chapter shall be valid."

On the other hand appellee contends "that the employe, through his bargaining agent, has agreed to quit work at a certain age in

return for a pension. Having accepted the benefits of the pension plan, the employe must also accept its burdens."

The question involved in the instant case was first put to a court of last resort in 1953. A New Jersey Superior Court had reversed an award of benefits to claimants mandatorily retired at age 65 according to a collective bargaining agreement which also provided a pension for retiring employees with at least five years service. Reversal by the Superior Court was grounded on the agency argument advanced by appellee here. On appeal to the New Jersey Supreme Court the decision was reversed (5–1) and the award reinstated. Campbell Soup Co. v. Board of Review, etc., 13 N.J. 431, 100 A.2d 287 (1953). Mr. Justice (then Judge) Brennan speaking for the majority at 13 N.J. 435, 100 A.2d 289 remarked:

> "If the inquiry is isolated to the time of termination, plainly none of the claimants left voluntarily in the sense that on his own he willed and intended at the time to leave his job.

> \*   \*   \*   \*   \*   \*

> "The Legislature plainly intended that the reach of the subsection was to be limited to separations where the decision whether to go or to stay lay at the time with the worker alone and,

even then, to bar him only if he left his work without good cause. The claimants here did not choose of their own volition to leave the employ of Campbell Soup Company when they were separated. They left because they had no alternative but to submit to the employer's retirement policy, however that policy as presently constituted was originated. Their leaving in compliance with the policy was therefore involuntary for the purposes of the statute."

Justice Brennan then examined the effect of the bargaining agreement in light of a New Jersey statute[2] similar in language and in purpose to the no waiver of rights provision in A.R.S. § 23–784, supra. He concluded:

> "While the treating as voluntary of a worker's leaving at the appointed time pursuant to the contract may not bring the contract within section 15, yet in practical effect the contract operates as an advance surrender of benefits, and an interpretation of subsection 5(a) to embrace such leaving is clearly inconsistent with the attainment of the statutory objectives. If an understanding as to the duration of employment were to have that effect, countless claimants would be disquali-

2. R.S. 43:21–15(a), N.J.S.A. (1950) provides in part:
   "\*   \*   \*   Any agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this chapter shall be void."

fied for benefits. Applicants for work very frequently must take jobs which the employers tell them at the time will engage their services for only a stipulated period. It would not be suggested that voluntary acceptance of such work, knowing in advance its fixed duration, constitutes the leaving of it at the agreed time a voluntary leaving for the purposes of subsection 5(a). The agreement by which the claimants were to leave the employ of Campbell Soup Company at age 65 is equally ineffective for that purpose." 13 N.J. at 436–437, 100 A.2d at 289–290.

The next case in this area was Bergseth v. Zinsmaster Baking Company, 252 Minn. 63, 89 N.W.2d 172 (1958) in which an opposite result was reached. In Zinsmaster two claimants were retired against their will pursuant to a union negotiated agreement calling for mandatory retirement at 65 and pensions for those with 15 years of service. Each of the claimants had served 14 years and therefore did not qualify for pension benefits. After retiring with only $200 severance pay they applied for unemployment benefits. The Commissioner reversed an appeal tribunal's denial of benefits.

On appeal the Supreme Court of Minnesota reversed (6–1) the award and adopted the reasoning of the Superior Court in Campbell Soup, i. e. that the employees had in effect traded their unemployment benefits for the concessions obtained from their employer under the collective bargaining agreement.[3] Support for this approach was found by the court in its earlier decision in Jackson v. Minneapolis-Honeywell Regulator Co., 234 Minn. 52, 47 N.W.2d 449 (1951). There the Minnesota court had held that one was not entitled to unemployment benefits during a shutdown of his employer's plant in accordance with a union negotiated contract calling for vacations with pay for workers with designated terms of service. Claimant, who had not served long enough to be entitled to a vacation with pay, was held to have been voluntarily unemployed because the contract itself contemplated the necessity of such a shutdown.

The Bergseth case was cited with approval and its holding followed in Lamont v. Director of Division of Employment Security, 337 Mass. 328, 149 N.E.2d 372 (1958) which involved a similar fact situation. In Lamont as in Bergseth the court followed the agency-contract approach it

3. Justice Murphy, dissenting, believed that: "A pension agreement entered into between an employer and its union should not be considered as a substitute for benefits created by social legislation to which all employees are entitled. It is a contractual obligation which flows from considerations separate and apart from the minimal benefits provided by law." 252 Minn. at 73, 89 N.W.2d at 178.

had previously used to affirm denial of benefits to one unemployed by virtue of a company shutdown for union negotiated vacations. See Moen v. Director of Division of Employment Security, 324 Mass. 246, 85 N.E.2d 779, 8 A.L.R.2d 429 (1949). The reasoning of Moen was approved of and followed despite the fact that the Massachusetts legislature had overruled Moen by amendment to that state's employment security law in 1949.[4] Lamont itself was overruled six months after being handed down when the legislature amended the law to provide that:

> " * * * An individual shall not be disqualified under the provisions of this subsection from receiving benefits by reason of leaving his work under the terms of a pension program requiring retirement from employment, notwithstanding his prior assent, direct or indirect, to the establishment of such pension program." Acts of 1958 ch. 677 at page 604, M.G.L.A. c. 151A § 25.

The fourth and heretofore most recent case in this field is Warner Co. v. Unemployment Comp. Ed. of Rev., 396 Pa. 545, 153 A.2d 906 (1959) involving facts closely parallel to those in the present case.[5] Without mentioning either Bergseth or Lamont the Pennsylvania Supreme Court followed Campbell Soup in holding that "the factual matrix at the time of separation should govern." [6] (Emphasis original.)

The court, viewing such collective bargaining agreements as primarily designed to protect an employee from arbitrary dismissal by his employer, stated that:

> "It would be anomalous to say that, in gaining this protection against his employer, an employee has lost a benefit which he otherwise would receive from the state—the right to receive unemployment benefits if dismissed— on the theory that he has voluntarily

4. Mass.Acts, 1949, ch. 476 at page 405, M.G.L.A. c. 151A § 1.
5. The agreement in Warner Co. provided that:
   "1. Each participant who, while an employee of the Company has attained age 65 on July 1, 1950, or attains age 65 thereafter, shall be eligible to retire on July 1, 1950, or his attainment of age 65, whichever is later, and, if he has completed 10 or more years of continuous service, shall be eligible for retirement income benefits * * *.
   "2. A participant may remain in service of the Company after his attainment of age 68 or July 1, 1952, whichever

last occurs, only with the consent of the company and upon his retirement thereafter, if otherwise qualified, he shall be entitled to receive retirement income benefits." 396 Pa. at 548, 153 A.2d at 908.
6. At 396 Pa. 551, 153 A.2d 909. The court then stated:
   "Viewed in this light, the questions here become simply (1) did Gianfelice cease working voluntarily as a matter of fact, and (2) was Gianfelice available for work thereafter? Since the answers on the record are (1) no, and (2) yes, Gianfelice is entitled to benefits." 396 Pa. at 551–552, 153 A.2d at 910.

agreed to quit." 396 Pa. at 551, 153 A. 2d at 909.

As in Campbell Soup the court in Warner Co. considered the bargaining agreement binding between claimant and his employer but ineffectual to thwart a statutorily expressed public policy "to alleviate the hardships attendant upon unemployment." 396 Pa. at 552, 153 A.2d at 910.

It is readily apparent that the above discussed decisions cannot be reconciled. But we think the better view is expressed in the Campbell Soup and Warner Co. cases [7] which focus upon the volition and intent of the individual workman at the time his employment is terminated. Construing a collective bargaining agreement's retirement provisions so as to deny benefits to one required to retire thereunder but willing and able to work violates at least the spirit if not the language of A.R.S. § 23–784, supra.[8]

It is argued, however, that the decision of this court in Beaman v. Bench, 75 Ariz. 345, 256 P.2d 721 (1953) requires denial of benefits in the instant case. In Beaman it was held (as in the Moen and Jackson cases, supra,) that employees who had not worked long enough to earn paid vacations were not entitled to unemployment benefits during a company shutdown for two weeks while other workers took paid vacations. There is language in Beaman to the effect that the shutdown was in effect due to union insistence upon strict compliance with the terms of the contract respecting vacations and that therefore the claimants were voluntarily unemployed as if they had asked for the layoff themselves.

There is a great difference, however, between a two-week layoff for vacations and mandatory retirement which is a permanent severance of the employer-employee relation. Further, a vacation period, paid or otherwise, is commonly regarded as part of an employee's overall compensation. For these reasons we regard neither the result in nor the rationale of Beaman as controlling in this case.

The Arizona Employment Security Law declares "economic insecurity due to un-

7. Commentators are overwhelmingly in support of the result reached in the Campbell Soup and Warner Co. cases. See 64 Dick.L.Rev. 71 (1959); 59 Colum. L.Rev. 209 (1959); 39 B.U.L.Rev. 124 (1959); 4 U.C.L.A.L.Rev. 438 (1957); 53 Mich.L.Rev. 849 (1955); 67 Harv.L. Rev. 1437 (1954); 28 N.Y.U.L.Rev. 1332 (1953); Contra, 44 Va.L.Rev. 1343 (1958).

8. Cf. "The legislator has only a fragmentary consciousness of this law; he translates it by the rules which he pre- scribes. When the question is one of fixing the meaning of those rules, where ought we to search? Manifestly at their source; that is to say, in the exigencies of social life. There resides the strongest probability of discovering the sense of the law. In the same way when the question is one of supplying the gaps in the law, it is not of logical deductions, it is rather of social needs, that we are to ask the solution." Cardozo, The Nature Of The Judicial Process at 122–23.

employment * * * [to be] a serious menace to the health, morals and welfare of the people of this state." A.R.S. § 23–601. One is just as unemployed and necessitous between jobs at 65 (or older) as he is at age 25. And an increasing segment of our labor force is now made up of those, such as claimants here, above the age of 65.[9]

Of course, the short term benefit provided by unemployment insurance is at best a poor substitute for any comprehensive solution of the problem of the aging worker.[10] But if it helps in any small measure to ease the plight of those forced to change occupations after a lifetime of service the legislative purpose is fulfilled.

There is no express or implied disqualification in A.R.S. §§ 23–775 to 23–777 for receipt of income from employer pension plans. Nor do we find any public policy which prevents claimants from receiving both the pension income and the temporary unemployment benefits. Indeed, the contrary is indicated. For in 1941 the Employment Security Law was amended to no longer disqualify one who also receives wages in lieu of notice and/or workmen's compensation benefits.[11] And in 1952 the disqualification for receipt of old age benefits under the federal social security law was abolished.[12] If the legislature sees no evil in duplication of benefits by the government we will not manufacture a prohibition against overlapping from private sources.

Here claimants met all of the tests of eligibility as provided in A.R.S. § 23–771. We hold that their leaving work was involuntary in the statutory sense. It thus follows that the appellee's experience rating account is subject to charges for the benefits due claimants. Accordingly, the judgment of the lower court is reversed and the Commission's award reinstated.

Judgment reversed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and JENNINGS and LOCKWOOD, JJ., concur.

9. Moreover, one reaching the age of 65 has a life expectancy of 14 years; at 68 the expectancy is still 12.2 years. Statistical Abstract of the United States, 1961 at 55.

10. This is of course properly a matter calling for legislative attention. Other state legislatures vary widely in their treatment of the problem. See U.S. Department of Labor, Bureau of Employment Security, Comparison of State Unemployment Insurance Laws as of January 1, 1960, at 116. California's provision respecting this particular problem is as follows:

"* * * An individual whose employment is terminated under the compulsory retirement provisions of a collective bargaining agreement to which the employer is a party shall not be deemed to have left his work without good cause." Cal. Unempl.Ins.Code, § 1256 (Supp.1960).

11. Ariz.Laws 1941, ch. 124, § 5, at pages 342–345.

12. Ariz.Laws 1952, ch. 122, § 3, at pages 250–252.