180 So.2d 668 (1965)
ST. JOE PAPER COMPANY, Petitioner,
v.
Camille F. GAUTREAUX and Florida Industrial Commission, Respondents.
No. G-296.
District Court of Appeal of Florida. First District.
December 7, 1965.
*669 Davisson F. Dunlap of Ulmer, Murchison, Kent, Ashby & Ball, Jacksonville, for petitioner.
Patrick H. Mears and Herbert W. Miller, Tallahassee, for respondents.
CARROLL, DONALD K., Judge.
The petitioner for a writ of certiorari seeks our review of a portion of an order entered by the respondent Florida Industrial Commission, sitting as the Unemployment Compensation Board of Review, affirming a decision of an appeals referee that the individual respondent, Gautreaux, left the petitioner's employment voluntarily and under conditions not disqualifying him for certain unemployment compensation benefits.
The question raised for our determination in these proceedings is whether Gautreaux, who was forced to retire on a pension pursuant to the provisions of a pension plan in a collective bargaining agreement, "has voluntarily left his employment without good cause attributable to his employer" so as to disqualify himself for benefits under subsection (1) of Section 443.06, Florida Statutes, F.S.A.
This question arose out of the following factual background:
The petitioner has a pension plan to which its employees make no financial contributions. Gautreaux entered into the petitioner's employment in 1938 and the following year he joined the Paper Makers Union, remaining a member thereof in good standing during the rest of his said employment. In 1948 and 1949 this union requested the petitioner to institute a pension plan, which request was renewed in 1950 at a collective bargaining meeting at which Gautreaux was present as a member of the union negotiating team. Several months later the union and the petitioner entered into an agreement, effective as of January 1, 1951, which contained a provision that an "employee shall terminate his employment on the first day of the month following his sixty-fifth birthday, and if he has completed ten (10) years or more of service, he shall be entitled to receive a pension." This agreement, after being discussed at union meetings, has twice been ratified since 1951 by a vote of the union members.
The said agreement was in effect on August 28, 1964, the effective date of Gautreaux's retirement pursuant to the quoted provision of the agreement, with retirement benefits in the amount of $66.95 a month.
*670 After his retirement under the quoted provision because of his having reached the age of 65, Gautreaux filed an application for unemployment compensation benefits. The claims examiner determined that Gautreaux had been separated from his employment with the petitioner under non-disqualifying conditions and that the employment record of the petitioner was charged with its pro rata share of any benefits which might be paid in connection with the claim. The petitioner appealed this determination to an appeals referee, who affirmed the claims examiner's said holding, which action of affirmance was appealed by the petitioner to the respondent Florida Industrial Commission, sitting as the Unemployment Compensation Board of Review, which affirmed the appeals referee's said decision, whereupon the petitioner instituted the present certiorari proceedings in this court.
The Florida Industrial Commission's said affirmance is in keeping with a policy which it adopted, effective October 20, 1964 (Rule 185U-2.07, Florida Industrial Commission). This policy provides, among other things that, where an employee is retired (other than from military service) pursuant to the terms of a retirement plan financed in whole or in part by the employer, under which he had no option to continue in his employment, he shall be disqualified for unemployment compensation benefits on the ground that he has voluntarily left his employment without good cause attributable to the employer "only if the Commission finds" that the payments to the employee under the plan, when prorated by weeks, "equal or exceed the maximum weekly benefit amount allowable under the Florida Unemployment Compensation Law." In the case at bar, Gautreaux's pension payments, on a weekly basis, are less than the weekly unemployment compensation payments.
The key provision of the Florida Unemployment Compensation Law which we must construe and apply in the present proceedings is subsection (1) of Section 443.06, which provides in pertinent part and in effect that an individual shall be disqualified for unemployment compensation benefits if he has "voluntarily left his employment without good cause attributable to his employer or in which he has been discharged by his employing unit for misconduct connected with his work, if so found by the commission * * * that good cause as used in this subsection shall include only such cause as is attributable to the employer or consists of illness or disability of the individual, other than pregnancy, requiring separation from his employment."
Applying the foregoing statutory provision to the facts before us in the present proceedings, the more precise question is whether, when Gautreaux retired on August 28, 1964, under the terms of the pension plan because he had reached the age of 65, he "voluntarily left his employment without good cause attributable to his employer * * *." There is no contention or suggestion that he was discharged by his employing unit for misconduct connected with his work. The pivotal word in the quoted provision is, of course, "voluntarily."
Did Gautreaux "voluntarily" leave the petitioner's employment when he reached 65 and was obliged to retire under the terms of the pension plan adopted by the union and the petitioner more than 13 years before? If not, does his leaving become voluntary because he was a member of the union when it adopted the pension plan and a year before had been a member of the union negotiating team that requested a pension plan? Or because Gautreaux, like other members of his union, may have heard the plan discussed at union meetings and may have voted for or against the plan? We do not think so, and we hold the view that such facts, occurring years before, do not preclude the finding that Gautreaux did not voluntarily leave his employment on August 28, 1964.
*671 So far as we have determined, the point presented for our determination in the present proceedings makes this a case of first impression, at least in Florida. The parties hereto, however, have ably briefed the question in some depth among the decisions from other jurisdictions on similar or analogous points. It must be conceded that a holding either way could be supported by the citation of numerous decisions from other states.
The wording of the unemployment statutes of other states varies in various particulars, and our primary duty here is to endeavor to ascertain the intent of the Florida Legislature as expressed in the Unemployment Compensation Law (Chapter 443, Florida Statutes, F.S.A.) We find no clear expression of legislative intent in subsection (1) of Section 443.06, discussed above, as to whether an employee leaving his employment under a pension plan is disqualified to receive unemployment compensation benefits. We, therefore, turn to Section 443.02, in which the Legislature declared its public policy in enacting the Florida Unemployment Compensation Law, as follows:
"443.02 Declaration of public policy.  As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This objective can be furthered by operating free public employment offices in affiliation with a nation-wide system of employment services, by devising appropriate methods for reducing the volume of unemployment and by the systematic accumulation of funds during the periods of employment from which benefits may be paid for periods of unemployment thus maintaining purchasing power and limiting the serious social consequences of unemployment. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police power of the state, for the establishment and maintenance of free public employment offices and for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, subject, however, to the specific provisions of this chapter."
We believe that this legislative declaration of public policy as revealed in Section 443.02 justifies a liberal interpretation of Chapter 443, the Florida Unemployment Compensation Law, in the interest of relieving the economic insecurity of a person unemployed through no fault of his own  so far as such relief, of course, is consistent with the specific provisions of the said chapter  in order to attain the Legislature's goal of lightening the burden of unemployment "which now so often falls with crushing force upon the unemployed worker and his family."
Another provision of Chapter 443 that appears to throw light on the legislative intent in the present inquiry is subsection (1) of Section 443.16, which provides in pertinent part:
"Waiver of Rights Void  Any agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this chapter shall be void. * * *"
Still another statute, not included within Chapter 443, that may be considered in *672 connection with the said contention respecting Gautreaux's union activities, is Section 447.03, Florida Statutes, F.S.A., which provides:
"447.03 Employees' right of self-organization.  Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."
Liberally construing all of the foregoing statutes in the light of the public policy as declared by the Legislature in Section 443.02, we have reached the conclusion that the respondent Florida Industrial Commission correctly held that Gautreaux was not disqualified for unemployment compensation benefits when he reached the age of 65 and mandatorily retired under the petitioner's plan, especially where the payments to him under the plan were less in amount than such benefits. We do not here pass upon the question whether the legal result would be the same if such payments equalled or exceeded such benefits, because that question is not before us for determination in these proceedings.
After pointing out that there are as yet no decisions by the appellate courts of Florida on the primary issue of the instant case, the respondent Commission in its brief candidly states that the "decisions of courts of last resort of other states, persuasive authority only, are nearly evenly divided on whether mandatory separation at a given age under the pension provisions of a collective bargaining agreement can be deemed a voluntary leaving." The said respondent argues therein, however, that the better view is that held by the courts which "carry out the plain statutory intent that a separation is voluntary only when the decision whether to go or to stay lies at the time with the worker alone. These decisions reject the contention that a private contract can have any effect on statutory benefit rights, and particularly when every state unemployment compensation law prohibits waiver or release." The decisions cited and relied upon in the said brief support this last argument, as we shall discuss below.
One of the earliest of such cases to reach an appellate court is Campbell Soup Co. v. Board of Review, etc., 13 N.J. 431, 100 A.2d 287 (1953), in which the question was squarely presented whether or not certain workers who were required to retire on pensions at the age of 65 by a collective bargaining agreement left work voluntarily without good cause so as to be disqualified for unemployment compensation benefits. The New Jersey Board of Review allowed such benefits, but its decision was reversed by the New Jersey Superior Court, Appellate Division, as reported in 24 N.J. Super. 311, 94 A.2d 514 (1953). This judgment of the Superior Court was reversed by the Supreme Court of New Jersey, which held that the said workers left their employment involuntarily, the Supreme Court saying:
"If the inquiry is isolated to the time of termination, plainly none of the claimants left voluntarily in the sense that on his own he willed and intended at the time to leave his job.
* * * * * *
"The Legislature plainly intended that the reach of the subsection was to be limited to separations where the decision whether to go or to stay lay at the time with the worker alone and, even then, to bar him only if he left his work without good cause. The claimants here did not choose of their own volition to leave the employ of Campbell Soup Company when they were separated. They left because they had no alternative but to submit to the employer's retirement policy, however that policy as presently constituted was originated. Their leaving in compliance with the policy was therefore involuntary for the purposes of the statute."
*673 This Campbell decision was followed by the Supreme Court of Pennsylvania in Warner Co. v. Unemployment Compensation Board of Review, 396 Pa. 545, 153 A.2d 906 (1959), particularly stressing the point that the parties cannot by contract alter statutory rights. The latter decision and the Campbell case were followed under comparable circumstances by the Alabama Court of Appeals in Reynolds Metals Co. v. Thorne, 41 Ala.App. 331, 133 So.2d 709 (1961), certiorari denied, 272 Ala. 709, 133 So.2d 713, holding that a worker who retired at 65 pursuant to a pension plan in a collective bargaining agreement did not leave his work voluntarily. In that case the Alabama Court of Appeals grounded its decision squarely upon the principles enunciated in the Campbell and Warner cases and at the same time distinguished the Minnesota and Massachusetts decisions holding to the contrary, saying:
"Our courts hold that the unemployment statute is remedial and is to be liberally construed to effect its beneficent purpose, and that the disqualifying provisions are to be narrowly construed. Department of Industrial Relations v. Stone, 36 Ala.App. 16, 53 So.2d 859; Tennessee Coal, Iron [&] R. Co. v. Martin, 33 Ala.App. 502, 36 So.2d 535, certiorari denied, 251 Ala. 153, 36 So.2d 547.
"The New Jersey and Pennsylvania courts, in the Campbell Soup Company and Warner cases, supra, emphasize this fundamental rule of construction. The Minnesota court in the Bergseth case [Bergseth v. Zinsmaster Baking Co., 252 Minn. 63, 89 N.W.2d 172] says that while the provisions of its statute are to be so construed, `* * Our function, guided by ordinary rules of construction, is to ascertain, if we can, what the legislative intent was and to give effect to it.' * * * The language clearly indicates an intention to protect employees from the extreme fluctuations of business conditions, and we would go further than the legislature intended were we to extend it to cover persons who are merely retiring from the labor market.
"No mention is made by the Massachusetts court in the Lamont case [Lamont v. Director of Employment Security, 337 Mass. 328, 149 N.E.2d 372] of the matter of liberal construction of the statute and the strict construction of the disqualification provision.
"It appears to us that in order to bring the claimant within the compass of these principles, we must follow the reasoning of the courts of New Jersey and Pennsylvania, in the Campbell Soup Company and Warner cases and look beyond the terms of the pension plan to question whether at the particular time claimant's retirement was in fact voluntary."
Perhaps the most scholarly decision in this field is that of the Supreme Court of Arizona in Employment Security Commission v. Magma Copper Co., 90 Ariz. 104, 366 P.2d 84 (1961). In that case two of the claimants were union members, the third was not. The collective bargaining agreement provided that employees shall retire at 65, except that an employee may postpone retirement and continue in service up to three years after reaching 65 if able in the opinion of the employer to perform his work. The employer terminated the employment of the three claimants at their respective ages of 69, 70, and 72, although they desired to remain employed. The Supreme Court of Arizona held that the claimants' leaving was involuntary and that they met all of the tests of eligibility for unemployment compensation benefits. After discussing the cases on both sides of this issue, the Supreme Court, without endeavoring to reconcile the conflicting decisions, held:
"It is readily apparent that the above discussed decisions cannot be reconciled. But we think the better view *674 is expressed in the Campbell Soup and Warner Co. cases which focus upon the volition and intent of the individual workman at the time his employment is terminated. Construing a collective bargaining agreement's retirement provisions so as to deny benefits to one required to retire thereunder but willing and able to work violates at least the spirit if not the language of A.R.S. § 23-784, supra."
We take a like position as to the conflicting decisions in this area, and think that the better view is that expressed in the above decisions from New Jersey, Pennsylvania, Alabama, Arizona, and other jurisdictions, and that the said view best reflects what we conceive to be the spirit and intent of the Florida Unemployment Compensation Law, as above discussed. We also agree with the principles recognized in those decisions that an unemployment compensation statute is remedial and is to be liberally construed to effect its beneficent purpose, and that the disqualifying provisions therein are to be narrowly construed.
On the other hand, the petitioner in its main brief forcefully marshals the authorities supporting a contrary holding and claims that a majority of the courts in other states, deciding the question under the same statutory provisions as are found in Section 443.06(1), Florida Statutes, F.S.A., have held that employees automatically retired with a pension from their employment, pursuant to the terms of a collective bargaining agreement, are not entitled to unemployment benefits. The petitioner states therein that the leading case holding the latter view is Bergseth v. Zinsmaster Baking Co., 252 Minn. 63, 89 N.W.2d 172 (1958), in which the Supreme Court of Minnesota held that certain retired claimants were voluntarily separated from their employment under the terms of the statute and hence disqualified for unemployment compensation benefits. The court recognized that there was authority to the contrary, and not only expressly disagreed with the reasoning of the New Jersey Supreme Court in the Campbell case, supra, but also specifically concurred in the views of the New Jersey Superior Court, Appellate Division, the decision of which was overturned by the Supreme Court of that state in the said case. The petitioner also cites decisions from Indiana, Kentucky, and Massachusetts for holdings similar to that in the Bergseth case, supra.
One of the strongest arguments made by the petitioner in its main brief is that the decision of the Florida Industrial Commission which is the subject of the present proceedings, would penalize the employer who has instituted a pension plan for his employees, as compared to an employer who has not, for the former would be required to bear the double financial burden of contributing to both the pension plan and the unemployment compensation fund. We must acknowledge that such may sometimes be the result, but we think that this argument should more appropriately be addressed to the legislative, rather than to the judicial, branch of the state government. The function of the courts, of course, is to interpret, not to make, the laws. Our duty here is to interpret the law enacted by the Legislature through the application of accepted principles of statutory construction in keeping with what we conceive to be the expressed legislative intent. Through this procedure we have reached the conclusion that under the provisions of the Florida Unemployment Compensation Law the decision of the Florida Industrial Commission that Gautreaux is entitled to unemployment benefits is right and should be affirmed. Accordingly, the petition for a writ of certiorari must be and it is
Denied.
WIGGINTON, Acting C.J., and STURGIS, J., concur.