490 P.2d 1192

Carol HARWOOD, Appellant,

v.

EMPLOYMENT SECURITY COMMISSION
of Arizona et al., Appellees.

No. 1 CA–CIV 1516.

Court of Appeals of Arizona,
Division 1,
Department A.

Nov. 29, 1971.

Cohen, Gerst, Groseclose & Meissner, by David A. Groseclose, Phoenix, for appellant.

Gary K. Nelson, Atty. Gen., by James A. Tucker and Walter B. Brown, Asst. Attys. Gen., for appellees Employment Security Commission of Arizona, Charles Minning, James A. Beaman and Kay A. Phillips.

Evans, Kitchel & Jenckes, by John O. Theobald, III, Phoenix, for appellee Motorola, Inc.

STEVENS, Presiding Judge.

The facts necessary for a determination of this appeal are as follows: The appellant had been employed by Motorola, Inc., for over a year, when on 15 August 1969, she was terminated in accordance with a company policy with prohibited an employee from working beyond the sixth month of pregnancy. As a result of this policy, which resulted in her loss of employment, the appellant instituted review proceedings with the Employment Security Commission, hereinafter referred to as the Commission. The subsequent hearings produced the determinations, rulings and decisions set forth below.

On 5 September 1969 a deputy of the Commission made a determination which held in pertinent part that the appellant:

"* * * left work voluntarily in accordance with a company rule on August 15, 1969. The rule required termination at the end of the sixth month of pregnancy. She was aware of this rule and accepted those conditions at the time of hire. Her leaving was voluntary and without good cause in connection with her employment."

Because of this determination, the appellant was held to be disqualified from receiving unemployment insurance for the period from 10 August 1969 to 27 September 1969. A.R.S. § 23–775.

On 8 October 1969 the Appeals Tribunal of the Commission mailed its decision affirming the deputy's determination to the appellant who subsequently filed her Letter of Application for Leave to Appeal. This application was denied on 24 October 1969, and on 13 November 1969, pursuant to A.R.S. § 23–681, the appellant filed a Petition for Review in the Superior Court for Maricopa County in order to obtain judicial review of the Commission's final decision.

On 24 July 1970 the Superior Court rendered its judgment affirming the Commission's ruling and this appeal followed.

The appellant has presented three issues for our consideration: First, whether the appellant left her work voluntarily and without good cause in connection with her employment; second, whether the Motorola policy which requires that an employee terminate her employment before the seventh month of pregnancy is void as an agreement for waiver of rights in violation of A.R.S. § 23–784; and third, whether the policy of the Commission, which deems such separation for pregnancy to be "voluntary and without good cause in connection with her employment," is arbitrary or unreasonable. We will consider these propositions in the order in which they have been presented.

It has been well stated previously that the central overall purpose intended to be accomplished by the Unemployment Security Act is to allow compensation for a limited period of time to those capable of working and available for work who are involuntarily unemployed through no fault of their own. Beaman v. Safeway Stores, 78 Ariz. 195, 277 P.2d 1010 (1954); A.R.S. § 23–601. Appellees argue that this purpose would be frustrated by any decision which would allow the appellant to qualify for unemployment compensation inasmuch as the nature of her termination was voluntary and without good cause in connection with her employment. We disagree.

In Employment Security Commission v. Magma Copper Company, 90 Ariz. 104, 366 P.2d 84 (1961), our Supreme Court had occasion to examine A.R.S. § 23–775, subsec.

1, upon which appellee relies. This code section reads, in part, as follows:

> "An individual shall be disqualified for benefits:
>
> "1. For the week in which he has left work voluntarily without good cause in connection with his employment, if so found by the commission, and in addition to the waiting week, for the six weeks which immediately follow such week, and his maximum benefit amount shall be reduced by an amount equivalent to six times his weekly benefit amount."

The Magma Copper Company case presented the question whether a worker, forced to retire on pension at age 68 or above at the instance of his employer but according to the provisions of a collective bargaining agreement, had left work voluntarily without good cause in connection with his employment so as to disqualify him for benefits to the extent provided in A.R.S. § 23-775, subsec. 1.

In holding that such workers were not disqualified from receiving unemployment benefits,[1] the Court noted that applicants for work very frequently must take jobs which the employers tell them at the time will engage their services for only a stipulater period, and quoted with approval from Warner Co. v. Unemployment Comp. Bd. of Rev., 396 Pa. 545, 552, 153 A.2d 906, 910 (1959). Warner Co. held that such bargaining agreements between a claimant and his employer were ineffectual to thwart a statutorily expressed public policy " * * * to alleviate the hardships attendant upon unemployment."[2]

With regard to the nature of a termination for compulsory retirement, the Arizona Supreme Court was of the opinion that the better view was expressed in Campbell Soup Co. v. Board of Review, Division of Employment Security, Department of Labor and Industry, et al., 13 N.J. 431, 435, 100 A.2d 287, 289 (1953), which focused upon the volition and intent of the individual worker at the time his employment is terminated. In Campbell Soup Co., it was held that:

> " 'The Legislature plainly intended that the reach of the subsection was to be limited to separations where the decision whether to go or to stay lay at the time with the worker alone and, even then, to bar him only if he left his work without good cause. * * * They left because they had no alternative but to submit to the employer's retirement policy, however that policy as presently constituted was originated. Their leaving in compliance with the policy was therefore involuntary for the purposes of this statute.' " Employment Security Commission v. Magma Copper Company, 90 Ariz. at 107, 366 P.2d at 86.

Inasmuch as our Supreme Court has expressed its opinion that the factual matrix at the time of separation should govern in determining whether a claimant's separation from work was voluntary or involuntary, the primary questions for our consideration in this case have become simply (1) did the appellant cease working voluntarily as a matter of fact, and (2) was appellant available for work thereafter?

There is no showing in the record that the appellant was unable or unwilling to continue the performance of the duties of her employment at the time the same was terminated. In fact, the separation from her employment was not voluntary but was enforced in accordance with the company policy. She testified that she was willing

---

1. For the distinction between ineligibility for and disqualification from benefits see Beaman v. Safeway Stores, 78 Ariz. 195, 199, 277 P.2d 1010, 1012 (1954).

2. A.R.S. § 23-601 declares, with reference to employment security, that:
   "Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family."

and physically able to continue with her Motorola employment.

The Supervisor of Benefits and Services of Motorola testified, in effect, that the appellant would not be permitted to continue her employment after six months of pregnancy because of the fixed and unvarying company policy.

We are of the opinion that the record before us conclusively demonstrates that the decision to go or to stay did not rest with the appellant at the time of termination, and that she left because there was no alternative other than to submit to the company's policy. Inasmuch as the only competent evidence presented, i. e., testimony of the claimant and a representative of the employer company, indicates at the very least that the appellant was not unwilling or unable to continue her employment, we are unable to affirm the holding of the Superior Court to the effect that the appellant voluntarily left her place of employment.

We are in agreement with the following comments which were made with reference to the Unemployment Compensation Law of the State of Pennsylvania.

"The word, 'voluntarily', may be used in a number of different senses, but, in our opinion, having regard to the purpose and intent of the act, considered as a whole, but with special reference to its declaration of public policy,[3] * * * the most appropriate meaning or definition is, 'of one's own motion' (Century Dictionary); 'of one's own accord' (Oxford Dictionary); 'acting of one's self' (Webster's New International Dictionary). When we say, 'He left work voluntarily', we common mean, he left of his own motion; he was not discharged. *It is the opposite of a discharge, dismissal or lay-off by the employer or other action by the employer severing relations with his employee, to provide against which the act was mainly designed."* Labor and Industry Department v. Unemployment Compensation Board of Review, 133 Pa.Super. 518, 521, 3 A.2d 211, 213 (1938). (emphasis added).

In view of the manner in which we have resolved the first issue presented for our consideration, it is unnecessary that we discuss the remaining questions raised on appeal. We do note, however, that the second question raised with regard to the waiver provisions of A.R.S. § 23–784 was discussed in Employment Security Commission v. Magma Copper Company, as it related to a collective bargaining agreement's retirement provisions. In that case, the Court held that any construction of a bargaining agreement's provisions so as to deny benefits to one required to retire thereunder but willing and able to work violates at least the spirit if not the language of A.R.S. § 23–784. While we refrain from an explicit holding as to whether this rationale is applicable to the case at bar, we are unable to conclude that the principle upon which it is based is inappropriate to the facts in the case now under consideration.

It is the holding of this Court that the claimant met all of the tests of eligibility as provided in A.R.S. § 23–771. We further hold that her leaving work was involuntary in the statutory sense.

In the matter of the judicial review of an administrative decision, the Court must look to the grant of authority set forth in the statute authorizing the review. We quote A.R.S. § 23–681, in part, as follows:

"§ 23–681. Judicial review of decisions

"A. A person aggrieved by a final decision of the commission, whether the decision is affirmative or negative in form, is entitled to judicial review of the decision.

* * * * * *

"C. The review prescribed by this section shall be conducted by the court without a jury and shall be confined to the record, except * * * (the exceptions are not applicable to this case).

**3.** See n. 2 for a statement as to the purpose of Arizona's unemployment compensation legislation.

"D. The court may affirm the decision of the commission or remand the case for further proceedings, or it may reverse or modify the decision if the substantial rights of the petitioners have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

\*    \*    \*    \*    \*    \*

4. Affected by error of law.

5. Unsupported by competent, material and substantial evidence in view of the entire record as submitted."

On appeal, this Court has reviewed the identical record presented to the Superior Court. This Court has the same authority as that granted to the Superior Court. The decision of the Commission being "affected by error of law" as to the effect of Motorola's company policy and being "unsupported by competent, material and substantial evidence in view of the entire record as submitted," we hold that the appellant was not disqualified from benefits under A.R.S. § 23–775.

The issuance of the mandate in connection with this opinion will constitute a directive that this case is reversed with instructions to enter judgment directing that the Commission afford to the appellant her full unemployment benefits.

CASE and DONOFRIO, JJ., concur.