493 P.2d 413

DUVAL CORPORATION, Appellee,

v.

EMPLOYMENT SECURITY COMMISSION of New Mexico, Appellant.

No. 9321.

Supreme Court of New Mexico.

Jan. 28, 1972.

448

Richard Baumgartner, Albuquerque, for appellant.

Hinkle, Bondurant, Cox & Eaton, Paul Kelly, Jr., Roswell, for appellee.

## 'OPINION

McMANUS, Justice.

Appellee, Duval Corporation, hereinafter called the Company, hired the claimant, Thurman Dewie Pruit, on December 10, 1951. Claimant, at that time, joined the Company's optional retirement plan. He was aware of the fact that the plan made retirement mandatory at age sixty-five. The union joined with the Company in urging that the employees join the plan but the plan was not pursuant to a union agreement and testimony taken from the employment security commission hearing indicated that the plan was strictly devised by the Company.

Claimant worked until April 1, 1970, when he reached the age of sixty-five. Prior to retirement, claimant had requested that he be allowed to continue working after the age of sixty-five. Permission to continue working was denied and he was routinely processed for mandatory retirement.

On April 8, 1970, claimant filed a claim for unemployment insurance and was granted benefits on April 15, 1970. The appellee protested to the claims deputy of the Employment Security Commission of New Mexico on the basis that the Company should not be charged for the benefits since Pruit had voluntarily left his job.

On September 21, 1970, the claims deputy determined that Pruit had been involuntarily dismissed within the meaning of the statute and that he qualified to receive unemployment benefits. On September 24, 1970, claimant found and accepted a new job and he is no longer receiving unemployment benefits.

The Company, on October 12, 1970, appealed the deputy's ruling to the appeals referee of the Employment Security Commission. The referee affirmed the deputy's determination. An appeal was taken to the Employment Security Commission as a body on December 4, 1970. Following a hearing on January 14, 1971, the decisions below were affirmed on February 12, 1971.

The Company petitioned the District Court of Eddy County for a writ of certiorari. The writ was granted and, following a hearing based on testimony from the Commission hearing and a memorandum brief submitted by the appellant, the district court reversed the Commission. The court concluded that the New Mexico statute is not intended to apply to persons who draw pensions and social security but only to those who need assistance as the result of business or political fluctuations and who are out of work and are without means to support themselves and their families.

It is from this decision that the Employment Security Commission appeals.

This is the first case of this type in New Mexico, but the problem is not new elsewhere. A number of jurisdictions hold that even though a person must retire under mandatory provisions, he is not eligible for unemployment insurance. On the other hand, some jurisdictions hold that under mandatory retirement provisions of a pension plan, the employee can apply for unemployment benefits. These decisions are irreconcilable with one another.

The District Court of Eddy County, New Mexico, relied on § 59-9-2, N.M.S.A. (1953 Comp.), which is the declaration of the state's public policy toward unemploy-

ment benefits. The pertinent part of that statute is:

"* * * [T]he public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. * * *"

The other pertinent sections of the statute are §§ 59–9–4, 59–9–5 and 59–9–18, N. M.S.A. (1953 Comp.). Section 59–9–4 sets down the conditions for eligibility of benefits; § 59–9–5 establishes the conditions of disqualification for benefits, and § 59–9–18 is the protection of rights and benefits section.

Section 59–9–5(a), N.M.S.A. (1953 Comp.), reads as follows:

"An individual shall be disqualified for benefits—

(a) For the week in which he has left work voluntarily without good cause, if so found by the commission, and for not less than one (1) nor more than thirteen (13) consecutive weeks of unemployment which immediately follow such week (in addition to the waiting period) as determined by the commission according to circumstances in each case, and such individual's total benefit amount shall be reduced in a sum equal to the number of weeks of disqualification multiplied by his weekly benefit amount."

These statutory provisions are identical to or quite similar to unemployment statutes in the states that have litigated the problem now before the Court. In all of the cases, the statutes seem to be the vehicle for the reasoning, rather than the motivating force behind the conclusion.

One of the major cases in this area that discusses both sides of the issue is Employment Security Com'n v. Magma Copper Co., 90 Ariz. 104, 366 P.2d 84 (1961). It was there held that three employees who were forced to leave their employment under a pension plan did not voluntarily leave without good cause and were entitled to unemployment benefits. The Arizona court relied on A.R.S. § 23–775, subsec. 1 (1956), which is the Arizona disqualification statute and is similar in language to § 59–9–5, supra. The court, in Magma, supra, noted that the employees had not left voluntarily without good cause within the meaning of the statute, but, on the contrary, the claimants had met all of the tests of eligibility as provided in A.R.S. § 23–771 (1956) and were entitled to benefits.

The court there discussed the evolution of litigation in the area of mandatory retirees and unemployment benefits beginning with Campbell Soup Co. v. Board of Review, 13 N.J. 431, 100 A.2d 287 (1953), where the New Jersey Supreme Court held that mandatory retirement was not a voluntary leaving of employment under the statute and thus the employees were entitled to benefits. That court further examined the bargaining agreement under which the pension plan had been created and concluded that voluntary acceptance of the agreement did not amount to a voluntary waiver of rights, i.e., a contract cannot operate as an advance surrender of rights. The reasoning here was based on R.S. 43:21–15(a), N.J.S.A. (1950), similar in language to A.R.S. § 23–784 and to our § 59–9–18, supra, which states, in part:

"* * * Any agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this act [59–9–1 to 59–9–29] shall be void. * * *."

Campbell Soup Co., supra, was followed by Bergseth v. Zinsmaster Baking Co., 252 Minn. 63, 89 N.W.2d 172 (1958), where the court held that two claimants, mandatorily retired at sixty-five, had traded their unemployment benefits for the concessions obtained from the employer under the collective bargaining agreement. Bergseth, supra, was followed by Lamont v. Director of Division of Employ. Security, 337 Mass.

328, 149 N.E.2d 372 (1958), which held that the claimant was not eligible under the same reasoning of Bergseth. Lamont, supra, was later overruled by the Massachusetts legislature.

The final case discussed in Magma, supra, and the one the Arizona court relied on was Warner Co. v. Unemployment Comp. Bd. of Rev., 396 Pa. 545, 153 A.2d 906 (1959). In that case, benefits were allowed as a matter of public policy. The court, in Magma, supra, recognized that the cases are irreconcilable but concluded that the better rule is to allow the benefits.

In the Magma case, supra, the court said:

"Of course, the short term benefit provided by unemployment insurance is at best a poor substitute for any comprehensive solution of the problem of the aging worker. But if it helps in any small measure to ease the plight of those forced to change occupations after a lifetime of service the legislative purpose is fulfilled."

With this statement we agree. This philosophy, in our opinion, is completely in accord with the Declaration of State Policy as concerns New Mexico in § 59-9-2, N.M.S.A. (1953 Comp.). In Redd v. Texas Employment Commission, 431 S.W.2d 16 (Tex.Civ.App.1968), the Texas Court of Civil Appeals, while holding against the claimant on other grounds, said:

"We agree with the court in the Magma Copper case, supra, that regardless of the minor factual differences, the decisions in the two divergent lines of authorities cannot be reconciled. See also St. Joe Paper Company v. Gautreaux, supra [Dist.Ct.App.Fla.1965, 180 So.2d 668]. We believe that the better view and the one that is more in line with the holdings of Texas courts in unemployment cases is that expressed in the Pennsylvania, Alabama, Arizona, Florida and Indiana cases cited above."

We find from the circumstances of this case that claimant herein did not leave his employment on a voluntary basis, and was entitled to the benefits of our unemployment compensation laws.

As to the point whether or not the employer's experience rating should be charged if benefits are allowed, we also hold that since it is our opinion that the claimant did not leave his employment voluntarily, the employer cannot be relieved of the charges on its experience rating account.

The cause is reversed with directions to enter an order that claimant was eligible for unemployment compensation benefits during the period of his unemployment, following his retirement, and that the employer's experience rating account is to be charged accordingly.

It is so ordered.

COMPTON, C. J., and MONTOYA, J., concur.