362 So.2d 312 (1978)
In the matter of Stig O.L. ASTROM et al., Cross-Petitioners.
Nos. 76-2340, 77-175 to 77-177, 77-560, 77-693 to 77-699, 77-1693, 77-1779 and 77-2098.
District Court of Appeal of Florida, Third District.
July 25, 1978.
Rehearing Denied September 19, 1978.
Smathers & Thompson and Shepperd D. Johnston, Miami, for Pan American.
Kenneth H. Hart, Jr. and Ollie Evans, Tallahassee, for Industrial Relations.
Lawrence Kanzer, Miami, for Astrom, Carroll, Chalcraft, Epperson, Harlan, Dolder, Lawyer, Maynulet, Melchiorre, Mowery and Pelletier.
James R. Rhoads, in pro per.
Before HAVERFIELD, C.J., PEARSON, J., and CRAWFORD, GRADY L. (Ret.), Associate Judge.
PEARSON, Judge.
We are presented with petitions for writs of certiorari and cross-petitions to review orders of the Department of Commerce, Division of Employment Security, granting unemployment compensation to some claimants against their employer, Pan American World Airways and denying compensation to other claimants. The petitions all arise out of the same facts, which occurred when Pan American drastically reduced its work force in Miami during 1975 and 1976. The petitions were consolidated for consideration and were argued together.
The facts, which are essentially uncontroverted, are that in the summer of 1975, while claimants were employed by Pan American at its maintenance base in Miami, Pan American announced that it was contemplating the transfer of the maintenance base to New York. Pan American entered into negotiations with the employees' union. *313 By the terms of the agreement, the employees were given the option of taking early retirement and receiving additional increased benefits, or continuing to work until a future, but undesignated, termination date. As an inducement to employees to choose early retirement, Pan American offered benefits of an additional fifty percent in the amount of pension benefits paid until age 62, plus an additional thirteen weeks of severance pay, with the option of maintaining insurance and hospitalization benefits for those employees who would take early retirement on or before December 31, 1975.
Claimants H.L. Abrams, Raymond W. Flannery, Richard Rhoads, James R. Rhoads, Henry P. Matthews, Herbert Eiffe, Robert Thomson, Lanzo Harvey, Richard Mikels and Charles A. Bauer elected to take early retirement. These claimants filed for unemployment compensation and there was a hearing before an Appeals Referee, with an appeal taken to the then Industrial Relations Commission. The Commission entered an order determining that the claimants should receive full unemployment compensation benefits without reduction by the amount of the pension benefits. Pan American's petitions for writs of certiorari urge that the Industrial Relations Commission erred in interpreting Section 443.06(8),[1] Florida Statutes (1975), by holding that because the pension benefits were, in part, a return of contributions, therefore, Section 443.06(8) was inapplicable.
The claimants respond that there is competent, substantial evidence to support the finding of the Commission, as follows:
"The Referee found that the claimant was disqualified for all, or a portion, of his benefits depending upon the weekly amount of his income for as long as he is eligible to receive such retirement income from his base period employer. However, the record does not support the Referee's decision.
"The retirement plan at issue was contained in the collective bargaining agreement entered into by the employer and the claimant's bargaining agent. The plan was in the nature of an annuity, with both the employees and the employer making contributions to the fund. The claimant has already paid income tax on the monies that he has contributed to the plan over the years.
"In the case of Dorothy Anderson versus Department of the Air Force, I.R.C. Order No. 75-852 F (filed September 30, 1975), this Commission had before it a similar fact situation. The claimant was a civil service employee on an air base located in Orlando, Florida. The base was closed and the claimant was offered early retirement at a reduced income. The claimant had been contributing to the retirement fund for a number of years. The Referee disqualified the claimant from receipt of benefits because her retirement income exceeded her weekly benefit amount. This Commission reversed the Referee's decision, stating, `We cannot agree with the Referee's decision. So long as the claimant's pension is a return of her contributions to the fund, it is not disqualifying income. The *314 claimant voluntarily participated in a public employee retirement program funded in part by employee contributions. Her investment in the fund is similar to the purchase of an annuity. The benefits which represent a return of the claimant's contributions are not subject to federal income tax due to the recognition of their character as periodic return of adjusted capital. Thus the pension, to the extent that it is a return of the claimant's contributions, is merely a return of capital. To consider it disqualifying income is inequitable and penalizes her for having the foresight ... [and] industry to set aside money for her old age. Subsequent payments from the fund after exhaustion of the claimant's contributions would constitute disqualifying income.'"
In enacting this statute, it is clear that the legislature intended to prohibit the receipt of dual compensation. The language of the legislature does not exempt from the provisions of the section any pension based upon the source of the contributions. The only requirement of the set off is that the pension or retirement program be embodied in a union contract or in a public or private employee benefit program. The substitution of a provision that defines income as the Internal Revenue Code does for income tax purposes is without the authority of the legislative enactment.
The claimants rely upon St. Joe Paper Company v. Gautreaux, 180 So.2d 668 (Fla. 1st DCA 1965), for a holding that there must be a liberal interpretation of the Florida Unemployment Compensation Law. We agree but cannot hold that such a liberal interpretation may extend to the insertion of provisions not in the statute. See Armstrong v. City of Edgewater, 157 So.2d 422, 425 (Fla. 1963); In Re Estate of Jeffcott, 186 So.2d 80 (Fla.2d DCA 1966); and James Talcott, Inc. v. Bank of Miami Beach, 143 So.2d 657 (Fla.3d DCA 1962).
Claimants James L. Harlan, Harris E. Carroll, Stig O.L. Astrom, Joseph Epperson, Virgil I. Chalcraft, Robert Dolder, Carl Mowery, Joseph Maynulet, Eugene Pelletier, Clarence G. Lawyer and George R.C. Melchiorre have filed petitions for a review of a determination by the Industrial Relations Commission disqualifying them from recovering unemployment compensation benefits upon a holding that they voluntarily left their employment. These claimants all elected early retirement on or before December 31, 1975.
The pertinent portions of the Commission's Order relative to this issue are:
"The Referee found that the claimant voluntarily left his employment without good cause attributable to his employer. After making extensive findings of fact the Referee reasoned, in part, that, `The claimant's desire to place himself in the most favorable financial position, under these circumstances, is quite understandable, and what any reasonable person might do under similar circumstances; however, this is a personal matter . . Continued work was available for the claimant under the same terms and conditions as before, until such time as he was, in fact, laid off due to lack of work. The November 1, 1975, amendments to the contract were matters agreed upon by both employer and the claimant's authorized agent, his union. These amendments certainly cannot be considered as coercive devices as they took nothing from the claimant which he had already been awarded under the original contract.' The evidence in the record supports the Referee's decision.
"Clearly, all of the claimants knew that there would be continued work for them with the employer, indefinitely. Subsequently, some of the claimants have found that they would not have been laid off and some have found that they would have been laid off, depending on their job classification and seniority. Many of the employer's employees who fell into this age bracket chose not to take early retirement prior to 1976. Of those who chose to take early retirement, several of the younger employees stood to lose little if anything of the base closing adjustment by continuing to work until they were *315 laid off and forced to take early retirement. As the Referee correctly pointed out in his decision, the Unemployment Compensation Law provides for the payment of benefits to claimants who voluntarily leave their employment only in cases where they had good cause attributable to the employer or were compelled to leave due to a disability or illness."
It is apparent that each claimant elected early retirement only because of the impending close out of operations in Miami. Such a reaction is understandable in that the employee may have felt that the uncertainty of his present employment necessitated a change, possibly in order to seek further employment. Pan American emphasizes that the date it would terminate these individuals was never ascertained and that from the record, there is a basis for a finding that the uncertainty of cut-off dates was due to the fact that no one knew how many men would elect to retire so that men junior in service could continue to work. There was certainty of the eventual lay off but work was available at the time that the claimants elected to accept the benefits offered for early retirement.
The case in Florida which seems closest on point with the facts is Quick v. North Central Florida Community Mental Health Center, 316 So.2d 301 (Fla.1st DCA 1975). There, claimant was told that she would have to resign or be discharged. She resigned effective at a future date but then quit work four weeks before the termination date. She was denied unemployment compensation benefits.
The claimants rely upon St. Joe Paper Company v. Gautreaux, 180 So.2d 668 (Fla. 1st DCA 1965). The holding of the St. Joe case is that mandatory retirement as of a definite date is tantamount to discharge. See also Campbell Soup Co. v. Board of Review, 13 N.J. 431, 100 A.2d 287 (1953). The question here is one of anticipatory discharge, and we hold that St. Joe Paper Company v. Gautreaux, supra, is not governing.
The petitions of Pan American are granted and those of the claimants are denied. The orders of the Division of Employment Security holding that claimants receiving pension benefits are eligible for unemployment benefits are quashed. The orders of the Division denying unemployment benefits to those claimants who elected voluntary retirement prior to the date of their termination of employment is approved and certiorari is denied.
It is so ordered.
NOTES
[1] "§ 443.06 Disqualification for benefits.  An individual shall be disqualified for benefits:

"(8) For any week with respect to which he has received, or is eligible to receive, from a base period employing unit, income from a retirement, pension or annuity program embodied in a union contract or either a public or private employee benefit program. Provided, however, that for any week in which income from a retirement, pension or annuity program as referred to in this subsection when combined with income from the retirement provisions of the United States Social Security Act is less than the weekly benefits which would otherwise be due under this chapter he shall be entitled to receive for such week, if otherwise eligible, benefits reduced by the income from the retirement, pension, or annuity program combined with the United States Social Security Act retirement income, pro-rated to a weekly basis. For the purpose of this subsection benefits from the United States Social Security Act, a disability benefit program, a supplemental unemployment benefit program, or any other program not specifically designated either in the union contract or a company benefit program as being retirement, pension or annuity income shall not be disqualifying. For the purposes of this subsection, the term base period employing unit shall not include any branch of the United States Armed Forces."