40 A.3d 94 (2012)
425 N.J. Super. 187
Talmage LORD, Appellant,
v.
BOARD OF REVIEW, N.J. Department of Labor, and Crossmark, Inc., Respondents.
No. A-1054-10T4.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 2012.
Decided April 11, 2012.
*95 Sarah Hymowitz argued the cause for appellant (Legal Services of New Jersey, attorneys; Ms. Hymowitz, Lazlo Beh and Dawn K. Miller, on the briefs).
Alan C. Stephens, Deputy Attorney General, argued the cause for respondent Board of Review (Jeffrey S. Chiesa, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Mr. Stephens, on the brief).
Crossmark, Inc. has not filed a brief.
Before Judges PARRILLO,[1] SKILLMAN and HOFFMAN.
The opinion of the court was delivered by
SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
The question presented by this appeal is whether an employee who accepted his employer's directive that he "had to resign" left his employment "voluntarily" and is therefore disqualified under N.J.S.A. 43:21-5(a) from receiving unemployment compensation benefits. We conclude that such a compelled resignation *96 does not constitute a voluntary separation from employment that disqualifies an unemployed person from receiving unemployment compensation.
Appellant was employed by respondent Crossmark to "reset merchandise" on shelves of retail stores in New Jersey and Pennsylvania. Crossmark required appellant to use his own car to travel from store to store in performing this work, which he did from Monday through Thursday. He was paid $11 per hour.
While he was driving home on Wednesday June 3, 2009, appellant's car broke down, and he had to have it towed to a garage. Appellant notified his supervisor of this problem, and the supervisor excused appellant from coming to work the next day, which was a Thursday. At that point, appellant was due to return to work the following Monday.
On Thursday, the garage to which appellant's car was towed told him that his transmission was broken. Appellant did not have enough money or sufficient credit on his credit card to have this costly repair done or to rent a substitute car.
Appellant attempted to call his father to assist him in securing the money needed for the repair or obtaining alternative transportation. Appellant also tried to call a friend to help him with alternative transportation. However, appellant was not able to reach either his father or the friend.
Appellant called his supervisor at Crossmark on Friday to inform him of the situation he was facing. When appellant advised the supervisor that he was not sure he would have a car to perform his work the following Monday, the supervisor told appellant that he "had to resign" from his employment "effective immediately." Appellant testified that he did not want to leave his job, but felt he "had no choice." Thus, based on the Friday conversation with his supervisor, appellant considered himself to have been "terminated."
Appellant filed a claim for unemployment benefits the same day his supervisor told him he had to resign. The Division of Unemployment Compensation denied his claim on June 17, 2009 on the ground that he had left his employment voluntarily without good cause attributable to the work.
At the hearing before an Appeal Tribunal on appellant's appeal from the denial of benefits, Crossmark did not appear. Consequently, appellant's testimony that his supervisor told him on Friday that he "had to resign" from his employment "effective immediately" was unrebutted. Based solely on appellant's testimony, the Appeal Tribunal upheld this denial, stating in a brief opinion:
The Board of Review has historically held that in cases bordering between discharge and voluntary leaving, the one who initiates that action which eventually leads to the separation is the one who is responsible for breaking the employer-employee relationship. Thus, the claimant left work because he was unable to obtain transportation to perform his job. This was a personal reason and was not attributable to the work.
The Board of Review subsequently affirmed the Appeal Tribunal's decision.
N.J.S.A. 43:21-5(a) provides in pertinent part that an employee who "has left work voluntarily without good cause attributable to such work" is ineligible for unemployment compensation benefits. Under this section, the threshold question is whether an applicant for unemployment compensation benefits left his job "voluntarily." If the appellant's separation from employment was voluntary, he or she is eligible for unemployment compensation benefits only if that separation was for "good cause *97 attributable to the work." N.J.S.A. 43:21-5(a); see Utley v. Bd. of Review, 194 N.J. 534, 544, 946 A.2d 1039 (2008).
Appellant argues that his separation from employment was not voluntary. In the alternative, he argues that there was good cause attributable to his employment for his inability to perform the job because his car was damaged as a result of its regular use in that employment.
We conclude that appellant's separation from his employment was not voluntary. Consequently, there is no need to reach his alternative argument.
In Campbell Soup Co. v. Board of Review, 13 N.J. 431, 435, 100 A.2d 287 (1953), Justice Brennan stated that an employee's separation from employment will be considered "voluntary" within the intent of N.J.S.A. 43:21-5(a) only if "the decision whether to go or to stay lay at the time with the worker alone." The undisputed facts show that the decision that appellant "had to resign" was Crossmark's alone, and therefore, there was nothing "voluntary" about appellant's separation from employment. Appellant was prevented from performing his work because his car, which he had to use to travel from store to store, had broken down. Appellant did not have sufficient money to repair the car or rent a substitute. When appellant spoke to his supervisor on Friday, June 5th, he had not yet been able to contact his father, who he thought might be able to lend him money, or a friend, who he thought might be willing to lend his car. Consequently, appellant was unable to give his supervisor assurance that he would have a car available on Monday to resume his work. At that point, the supervisor summarily told appellant that he "had to resign ... effective immediately." If the supervisor had said, "you're fired," there would be no dispute that appellant's separation from employment was involuntary. There is no basis for reaching a different conclusion simply because the supervisor chose to tell appellant that he "had to resign." The import of the words was the same: the employer was discharging appellant because he could not give the supervisor assurance that he would have a car available to perform his job the following week.
The Appeal Tribunal's finding that appellant "could have continued working if he was able to obtain suitable transportation to report for work on 06/08/09[,]" was based on the following confusing exchange between the Appeals Examiner and appellant, which the Examiner considered out of context:

EXAMINER: If you had transportation could you went into [ ] work on Monday?

CLAIMANT: If I had transportation I would have been willing to work on Monday.

EXAMINER: Okay ... so that's what I'm so ... he said you had to resign but there had to be some ... you know if you could have got [a] ride on Monday you would have still had the job is that correct?

CLAIMANT: That's right.
However, reading appellant's testimony in its entirety, it is clear that his supervisor discharged him on Friday rather than preserving his right to return to work the following Monday and that appellant's separation from employment was not a voluntary resignation. That testimony included the following:

EXAMINER: Okay so when you spoke with [the supervisor] Friday what did you say to him?

CLAIMANT: I said I couldn't get a hold of my dad.

EXAMINER: Okay.

*98 CLAIMANT: Cause my dad probably would have helped me with something. But he said we couldn't wait....

EXAMINER: Okay but what did your employer say on Friday the 5th of June when you spoke with him?

CLAIMANT: He said I would have to resign. I'd have to quit[.] I can't and that was it.
....

EXAMINER: Did you give your employer some type of time frame on when you were going to get your car fixed?

CLAIMANT: They didn't give me a chance.

EXAMINER: Okay so what did he say to you then?

CLAIMANT: He said you have to resign.

EXAMINER: Okay and so did you want to resign?

CLAIMANT: No I did not.

EXAMINER: Okay so he wouldn't give you any time to

CLAIMANT: That's right.

EXAMINER: [Get alternate] transportation?

CLAIMANT: That's right.

EXAMINER: Did he say you would have to resign if you didn't report by a certain date?

CLAIMANT: He said I had to resign.
....

EXAMINER: Okay so if you could have gotten a car by your next scheduled day say you would still have a job then cause Thursday was okay with the employer.

CLAIMANT: I think, and I tried part of the day Friday until I called him back. And I could not get one. And then that's when he told me that I had to resign.

EXAMINER: He told you [you] had to resign what[,] effective immediately?

CLAIMANT: Yes.
....
[CLAIMANT'S ATTORNEY]: From your understanding when you called in on Friday that would have been June 5th to report that your car wasn't working and that you [ ] hadn't been able to yet resolve the problem [ ] what did your employer say?

CLAIMANT: That I had to resign.
[CLAIMANT'S ATTORNEY]: Did you want to leave your job?

CLAIMANT: No.
[CLAIMANT'S ATTORNEY]: Did you feel you had any choice in the matter?

CLAIMANT: I felt I had no choice.
[CLAIMANT'S ATTORNEY]: Did you consider yourself to be terminated?

CLAIMANT: Yes.
[CLAIMANT'S ATTORNEY]: Did you[r] employer ever give you an opportunity to fix the car by say that Monday?

CLAIMANT: No.
The only possible conclusion that can be reached based on this testimony is that even though the supervisor characterized his employment action as a "resignation" by appellant, the supervisor actually discharged appellant on Friday because appellant could not provide the supervisor with assurance that he would have a car available for his use by Monday.
In defending its decision, the Board of Review relies primarily upon Self v. Board of Review, 91 N.J. 453, 453 A.2d 170 (1982). In that case, two employees commuted to work in one of the employee's cars until it became inoperable. Id. at 455, 453 A.2d 170. Thereafter, they commuted to work in another employee's car until that employee quit. Ibid. The employees then informed the employer they could not get to work due to a lack of *99 transportation. Ibid. Although the employees had only missed two days of work when their supervisor told them he would have to replace them, "neither requested a leave of absence" and "[n]o projection was made that their absence from work would be of short duration." Id. at 456, 453 A.2d 170. Under these circumstances, the Court concluded that the employees' separation from work was voluntary. Id. at 457-59, 453 A.2d 170.
If appellant had told his supervisor that his car was broken and he did not know when, or even if, he would be able to fix the car or obtain a replacement, this case may have been similar to Self. However, that is not what happened. Instead, appellant told his supervisor about his efforts to obtain a car with the assistance of his father or a friend. Appellant's employer of course had the right to determine that its need for a person to perform the functions of appellant's job was so great it could not wait for appellant to solve his car problem. However, even if the employer's action was fully justified from a business standpoint, the fact remains that appellant's separation from his job was employer rather than employee-initiated. Therefore, it was not voluntary. See Campbell Soup, supra, 13 N.J. at 435, 100 A.2d 287.
The Board of Review also argues that appellant's disqualification from receiving unemployment compensation benefits should be affirmed because he failed to discharge his "responsibility to do what is necessary and reasonable in order to remain employed[,]" Domenico v. Dep't of Labor & Indus., 192 N.J.Super. 284, 288, 469 A.2d 961 (App.Div.1983), by not contacting his supervisor after substitute transportation became available.[2] However, this responsibility only applies to a person who remains employed. Ibid. A person who has been discharged has no comparable responsibility to pursue reemployment with his former employer. We are satisfied for the reasons previously discussed that appellant was discharged by Crossmark on Friday. Therefore, appellant is not disqualified from receiving unemployment compensation benefits because he failed to get back in touch with Crossmark when alternative transportation subsequently became available.
The Appeal Tribunal's conclusion that an employee's temporary inability to provide the transportation required to perform his job constituted a "voluntary" separation from employment within the intent of N.J.S.A. 43:21-5(a) is inconsistent with the principle that the Unemployment Compensation Law "is to be construed liberally in favor of allowance of benefits." Utley, supra, 194 N.J. at 543, 946 A.2d 1039 (quoting Yardville Supply Co. v. Bd. of Review, 114 N.J. 371, 374, 554 A.2d 1337 (1989)). The disqualification from the receipt of unemployment compensation benefits imposed when an employee's separation from employment is found to fall within N.J.S.A. 43:21-5(a) continues for the duration of his unemployment; the employee does not again become eligible for benefits until he "becomes reemployed and works eight weeks in employment, ... and has earned at least ten times the individual's weekly benefit rate[.]" In contrast, an employee who is disqualified from the receipt of benefits based on a "discharge[] for misconduct connected with the work" is only ineligible for a period of seven weeks. N.J.S.A. 43:21-5(b). The serious adverse consequences to an unemployed person of a disqualification *100 from the receipt of unemployment compensation benefits under N.J.S.A. 43:21-5(a) strongly militates against an overly expansive interpretation of this section. See Utley, supra, 194 N.J. at 547-48, 946 A.2d 1039. Interpreting N.J.S.A. 43:21-5(a) in accordance with the beneficent purposes of the Unemployment Compensation Law compels the conclusion that appellant's separation from employment was not voluntary and that he is therefore entitled to unemployment compensation benefits.
Accordingly, the final decision of the Board of Review is reversed, and the case is remanded to the Division of Unemployment and Disability Insurance to determine the amount of unemployment compensation benefits to which appellant is entitled.
NOTES
[1] Judge Parrillo did not participate at oral argument of the appeal, but has participated in the decision with the consent of the parties. See R. 2:13-2(b).
[2] It is unclear from the record whether this occurred before Monday, when appellant would have been required to return to work if he had not been discharged on Friday, or several days later.