**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3961-15T3

ANN VILLA,

    Appellant,

v.

BOARD OF REVIEW, DEPARTMENT
OF LABOR, and HUNTERDON ART
MUSEUM,

    Respondents.

_____

Submitted August 1, 2017 — Decided  August 9, 2017

Before Judges Hoffman and Currier.

On appeal from the Board of Review, Department
of Labor, Docket No. 073-698.

Inglesino, Webster, Wyciskala & Taylor, LLC,
attorneys for appellant (Ellen O'Connell and
Joseph M. Franck, on the briefs).

Christopher S. Porrino, Attorney General,
attorney for respondent Board of Review
(Melissa Dutton Schaffer, Assistant Attorney
General, of counsel; Peter H. Jenkins, Deputy
Attorney General, on the brief).

Respondent Hunterdon Art Museum has not filed
a brief.

PER CURIAM

Claimant Ann Villa appeals from the April 11, 2016 decision of the Board of Review (Board) finding her ineligible for unemployment benefits pursuant to N.J.S.A. 43:21-5(a). After a review of the contentions advanced on appeal in light of the record before us and the applicable principles of law, we reverse.

Claimant was employed as Director of Development by defendant Hunterdon Art Museum. Contending that she had been fired by the museum, claimant submitted a claim for unemployment benefits. The Deputy Director of Unemployment Insurance (Deputy) determined that claimant had left work voluntarily, and therefore, she was disqualified for benefits.

Following claimant's appeal of the determination, a telephonic hearing was conducted before the Appeal Tribunal. Claimant testified that during a meeting with the Museum Director (Director), claimant was advised that she was not well-liked by the staff at the museum, and if she was not going to change her personality she would have to leave. Claimant responded that she could not change her personality, it was what had made her successful in her profession. "[P]resuming" that she was being fired, claimant stated that she stood up, shook the Director's hand, thanked her, and left the office with the understanding that she had been terminated. The Director did not respond to

claimant's words or actions and did not call her back into the office.

The Museum Director disputed that claimant had been fired. She testified that at the meeting she discussed with claimant that she had alienated the staff and she needed to work more collaboratively with her coworkers. The Director contended that she did not intend to fire claimant at the meeting; she was advising her that she needed to change her attitude. The Director acknowledged that claimant stated to her: "So what you're asking of me is I gotta change or [you're] letting me go?" The Director replied, "I think you've gotta think about parting ways if you can't change." The Director conceded during the hearing that if claimant had not changed her attitude she would have been fired "at a certain point . . . [a]bsolutely."

The Appeal Tribunal reversed the decision of the Deputy, finding that claimant had not left the job voluntarily without good cause attributable to the work. The Tribunal stated:

> [T]he employer presented the claimant with the
> option to leave. The claimant chose to leave
> because her attitude was part of her success
> and the expectation that she change it was []
> unreasonable. The option to leave was given
> by the employer with the intention of
> terminating the claimant's employment.

A-3961-15T3

Following defendant's appeal, the Board of Review found that claimant had chosen "to leave during a meeting with the executive director when asked to work more collaboratively" and therefore, had not left her employment for good cause attributable to the work. The Board found claimant to be disqualified for benefits, reversing the Tribunal's decision.

In this appeal, claimant argues that the Board erred in finding her termination to have been voluntary, as her own understanding that she had been fired was corroborated by the Director's behavior at the end of the meeting.

We are mindful that our review of administrative agency decisions is limited. We will not disturb an agency's action unless it was clearly "arbitrary, capricious, or unreasonable." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997).

N.J.S.A. 43:21-5(a) provides in pertinent part that an employee who "has left work voluntarily without good cause attributable to such work" is ineligible for unemployment compensation benefits. Under this section, the threshold question is whether an applicant for unemployment compensation benefits left her job "voluntarily." If the separation from employment was voluntary, the applicant is eligible for unemployment compensation benefits only if that separation was for "good cause attributable

to [the] work." N.J.S.A. 43:21-5(a); Utley v. Bd. of Review, 194 N.J. 534, 544 (2008).

Claimant argues that her separation from employment was not voluntary. We agree.

In Lord v. Board of Review, 425 N.J. Super. 187, 189 (App. Div. 2012), we considered whether a "compelled resignation" constituted a voluntary separation from employment requiring a disqualification for benefits. In that case, Lord was required to use his own vehicle to perform his job duties. Ibid. When his car broke down and he was unable to afford the necessary repairs, Lord was told by his supervisor that he had to resign from his employment. Id. at 190. Although he did not want to leave the job, Lord felt that he had no choice and he considered himself to have been terminated. Ibid.

In our review of the Board's determination that Lord had left his job for personal reasons not attributable to the work, and therefore, he was disqualified from receiving benefits, we concluded that the decision to resign was made only by the employer. Id. at 191. We stated that there was nothing voluntary about Lord's separation from employment; he did not desire to leave the job. Ibid. If his car had been operational, he would have remained employed.

Here, claimant was criticized in a meeting with her supervisor and told that if she did not change her personality she would be terminated. Defendant argues that claimant herself made the decision to leave the job; the Museum had no intention of terminating her at that time. Defendant contends that an on-the-job reprimand is not sufficient to categorize an employee's departure as involuntary. This conversation, however, was more than a reprimand. Claimant was told to "change her personality" or suffer termination. Even if the Director did not intend to discharge claimant that day, she made it clear at the hearing that if a change was not made, termination was certain to occur at a future time.

We find these circumstances to be similar to the "compelled resignation" discussed in Lord. Claimant did not leave voluntarily; she was advised that she would be terminated if she did not change her personality. In her view, her personality was what made her a successful development director. The decision whether to go or stay was, therefore, not solely hers to make. See Campbell Soup Co. v. Bd. of Review, 13 N.J. 431, 435 (1953). As she stated: "[W]hen I was told to change my personality or leave . . . I didn't have an option." Claimant determined she did not have a choice other than to leave her position; her resignation was involuntary.

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION