**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3946-18T1

CAREN KERN,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR
and BRAINSTORM
LEARNING AND ARTS, LLC,

     Respondents.

_____

Submitted February 4, 2020 – Decided February 28, 2020

Before Judges Fisher, Accurso and Rose.

On appeal from the Board of Review, Department of Labor, Docket No. 149,383.

Milman Labuda Law Group PLLC, attorneys for appellant (Netanel Newberger, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Sookie Bae, Assistant Attorney General, of counsel; Sean Patrick Havern, Deputy Attorney General, on the brief).

Respondent Brainstorm Learning and Arts, LLC, has not filed a brief.

PER CURIAM

Claimant Caren Kern appeals a final decision of the Board of Review, disqualifying her from unemployment benefits because she left her job without good cause attributable to the work. N.J.S.A. 43:21-5(a). We affirm.

The record before the Board reflects Kern worked part-time as a client relations manager for Brainstorm Learning and Arts, LLC. Six months after she was hired, Brainstorm's supervisor emailed Kern that she wished to discuss "a couple of topics," including the manner in which Kern had handled incoming telephone calls and text messages. Referencing "a lot of spelling errors in [Kern's] emails and text messages," the supervisor stated: "We are a tutoring company and we should spell things correctly." The supervisor advised Kern she would speak with her the following day. But early the next morning, Kern responded by email, terminating her employment "effective immediately." Kern's email stated her supervisor's "continuous toxic interactions and treatment towards [her was] affecting [her] health."

At the hearing before the Appeal Tribunal, the supervisor testified Kern's final email was the first time Kern had communicated she was dissatisfied with her work environment. Kern had neither requested a medical accommodation

2

nor leave of absence, and had not complained of workplace harassment. During her pre-employment interview, Kern had mentioned "she was a cancer survivor" of several years, but she told the supervisor "everything was clear" and she did not have any health issues.

Brainstorm's human resources associate corroborated the supervisor's testimony, echoing that Kern never complained or raised any workplace concerns before she quit. The associate confirmed Brainstorm had provided Kern with a manual, delineating the company's procedures for filing a complaint, but Kern never filed a complaint.

At the hearing, Kern maintained she resigned because she "felt like [she] was getting abused" at work. Kern said she had expressed her concerns to her supervisor, the HR associate, and Brainstorm's owner, but "nothing was getting better." As one example, Kern said she had complained to the HR associate that her supervisor made a "threatening" remark about mistakes Kern had made on a "surprise" test, which was administered shortly after Kern started working for Brainstorm. Kern said the supervisor stated, "if you don't do better . . . do better or else."

Kern testified that a few months later her supervisor wrote her up for the manner in which she had handled a call from a prospective client. Unbeknownst

A-3946-18T1

to Kern, the caller was a "secret shopper," who was hired by Brainstorm to evaluate the quality of its customer service. In response to Kern's admittedly defensive reaction, Kern claims her supervisor responded, "well, if you don't like it this is it. You could quit." Kern said her supervisor raised her voice during a video conference in the presence of the HR associate, like "an angry parent would talk to their [sic] child." Kern alleged her supervisor's conduct "absolutely" affected her health, claiming she "couldn't sleep." But, Kern acknowledged she did not receive medical attention, request a leave of absence, or seek a medical accommodation from Brainstorm, "[b]ecause there was no reason to."

Although Kern acknowledged an employer's "right to provide feedback" to its employees when warranted, Kern cited two other incidents in which she felt harassed by her supervisor. One incident involved Kern's failure to secure tutors for off-site classes. The other concerned what her supervisor deemed was Kern's dismissive response to an email from a billing staff member, informing Kern that many of her submissions contained errors. In sum, Kern felt offended by her supervisor's reprimands.

Following the three-day hearing, the Appeal Tribunal issued a written decision, rejecting Kern's arguments that: "her supervisor's criticism created a

hostile work environment" and "the work environment adversely affected her health."  The Appeal Tribunal elaborated:

> Substantial evidence demonstrated that the supervisor's communications did not berate or humiliate [Kern], but brought up performance issues[,] which the employer had a right to address.  The employer has a right to provide criticism of work performance to staff members, in an effort to improve their work performance.
>
> . . . [Kern] did not provide unequivocal medical documentation to the employer that the work was aggravating her health.  [Kern] did not attempt to preserve her employment by requesting a leave of absence or a medical accommodation.
>
> . . . The employer provided substantial evidence that [Kern] had access to the company policy regarding harassment and discrimination and the existence of the human resources department.  [Kern] did not make a reasonable attempt to resolve the issue by complaining about the work environment to upper management or to the human resources work department.

Accordingly, the Appeal Tribunal disqualified Kern for benefits, finding she left her work voluntarily without good cause attributable to the work, and remanded to the Director of the Division of Unemployment and Temporary Disability Insurance to determine Kern's "potential liability for refund of

benefits" she had received.[1]  The Board affirmed the Appeal Tribunal's decision,

concluding Kern was afforded a full hearing and

> available evidence supports that although the
> supervisor may have been loud and not as friendly and
> supportive as [Kern] expected, that behavior did not
> create a hostile working environment as it was not
> discriminatory, unhealthy or unsafe.  Furthermore, . . .
> as a part-time employee, working [twenty-eight] hours
> per week, [she] could have pursued other employment
> prior to leaving the job to become unemployed.

This appeal followed.

On appeal, Kern contends her separation from employment was not

voluntary.  In the alternative, she argues she "had good cause to leave her

employment due to the hostile work environment, which was akin to

constructive discharge."  Kern's remaining overlapping arguments challenge the

Board's factual and legal findings, claiming its decision was arbitrary and

capricious and violated public policy.  She also contends the Appeal Tribunal

and the Board failed to make credibility determinations, discounting her

testimony that the supervisor "repeatedly raised her voice at [Kern], threatened,

---

[1]  In reaching its decision, the Appeal Tribunal reversed an earlier decision of
the Deputy Director, which held Kern was eligible for benefits without
disqualification.  The parties did not provide that determination on appeal, and
it is not pertinent to our decision.

berated and humiliated [her] and, singled [her] out for discipline," thereby subjecting Kern to a hostile work environment.

Finally, Kern purports to challenge the Board's decision affirming the Appeal Tribunal's determination that required her to repay $9000 in unemployment benefits. As stated above, the Board remanded the repayment issue to the Director for an initial determination. Kern has not, however, provided us with the Board's final decision establishing her liability to refund benefits previously received under N.J.S.A. 43:21-16(d). Accordingly, we decline to consider that portion of Kern's appeal. See R. 2:6-1(a)(1)(C) (mandating that the appendix include the "determination appealed from or sought to be reviewed or enforced"); see also Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005) (stating that an appellate court is not "obliged to attempt review of an issue when the relevant portions of the record are not included").

We have considered Kern's remaining contentions in light of the record and the applicable legal principles, and conclude they are without sufficient merit to warrant extended discussion in our written opinion. R. 2:11-3(e)(1)(E). Pursuant to our limited standard of review, In re Stallworth, 208 N.J. 182, 194 (2011), we affirm, as did the Board, substantially for the reasons expressed in

7

the Appeal Tribunal's cogent written decision, which "is supported by sufficient credible evidence on the record as a whole," R. 2:11-3(e)(1)(D); and is not arbitrary or capricious or inconsistent with legislative policy. See Brady v. Bd. of Review, 152 N.J. 197, 210-11 (1997). We add the following brief remarks.

Pursuant to N.J.S.A. 43:21-5(a), an employee who "has left work voluntarily without good cause attributable to such work" is disqualified for unemployment compensation benefits. "Under this section, the threshold question is whether an applicant for unemployment compensation benefits left [the] job 'voluntarily.'" Lord v. Bd. of Review, 425 N.J. Super. 187, 190-91 (App. Div. 2012). An employee has left work "voluntarily" within the meaning of the statute when "the decision whether to go or to stay lay at the time with the worker alone." Campbell Soup Co. v. Bd. of Review, 13 N.J. 431, 435 (1953); see also Utley v. Bd. of Review, 194 N.J. 534, 544 (2008).

Kern claims she left her job because the circumstances were so inhospitable that she was constructively discharged. As our Supreme Court has recognized, however, "[a] constructive discharge claim requires more egregious conduct than that sufficient for a hostile work environment claim." Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 28 (2002). It requires "conduct that is so intolerable that a reasonable person would be forced to resign rather than

continue to endure" such conduct in the workplace. Ibid. This standard envisions a "sense of outrageous, coercive and unconscionable requirements." Ibid.

In this case, Kern asserts that her supervisor's conduct was tantamount to discharge, but she failed to utilize all the resources available to her to resolve her perceived problems. She had the ability to report her issues to the HR department. "[A]n employee has the obligation to do what is necessary and reasonable in order to remain employed rather than simply quit." Ibid. Kern's failure in this regard is enough to deny her claim because of her obligation to take steps to remain employed.

We also reject Kern's contention that the Appeal Tribunal failed to properly assess and weigh the credibility of the three witnesses. The Appeal Tribunal's decision rested on its implicit credibility findings. "[C]redibility findings need not be explicitly enunciated if the record as a whole makes the findings clear." In re Taylor, 158 N.J. 644, 659 (1999). The record as a whole made its findings clear.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3946-18T1