**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2085-18T2

ALLAN MARAIN,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and YANIRYS M. PICHARDO,

     Respondents.

_____

Argued March 2, 2020 – Decided April 8, 2020

Before Judges Fasciale and Rothstadt.

On appeal from the Board of Review, Department of Labor, Docket No. 161,255.

Allan Marain, appellant, argued the cause pro se.

Andy Jong, Deputy Attorney General, argued the cause for respondent Board of Review (Gurbir S. Grewal, Attorney General, attorney; Sookie Bae, Assistant Attorney General, of counsel; Andy Jong, on the brief).

Respondent Yanirys M. Pichardo has not filed a brief.

PER CURIAM

Allan Marain, the former employer of claimant Yanirys M. Pichardo, appeals from a final determination made by the Board of Review (Board) of the New Jersey Department of Labor and Work Force Development, Division of Unemployment and Insurance Services (Department). The Board determined Pichardo's separation from her employment with Marain was the result of her misconduct under N.J.S.A. 43:21-5(b), rather than her voluntarily abandoning her position under N.J.A.C. 12:17-9.11(a), for reasons unrelated to her employment, which would have disqualified her from receiving any benefits, see N.J.S.A. 43:21-5(a). The Board made its determination based upon its Appeal Tribunal's finding that Pichardo was absent from her position with Marain for a month and a half, and during that time, gave Marain multiple excuses for her absence that she later admitted were untrue. According to the Appeal Tribunal, when Pichardo admitted that her reasons for her being absent were untrue, Marain terminated her employment.

On appeal, Marain argues that the Board failed to properly consider the facts adduced at the hearing and abused its discretion in finding that he discharged Pichardo, rather than that she abandoned her employment. We reverse because we conclude that the Board's final determination constituted an

2

abuse of its discretion as it was not supported by the evidence and was legally incorrect.

The facts taken from the record are summarized as follows. Pichardo began her employment with Marain as a legal assistant on May 22, 2017. Beginning on June 25, 2018, Pichardo failed to report for work. From that date through August 9, 2018, Pichardo repeatedly contacted Marain and gave him numerous reasons why she could not come to work.

On August 12, 2018, Pichardo filed for unemployment benefits. According to her application for benefits, Pichardo stated the reason for leaving her employment was that she was concerned about a coworker's use of marijuana while at work.[1] The day after she filed her application for unemployment, she asked Marain to meet with her.

On August 14, 2018, the parties met and during their discussion, Pichardo admitted that contrary to the information she gave Marain during her absence, she had only been hospitalized for one or two days during the month and a half that she remained absent from her job. At the meeting, Pichardo expressed that

_____

[1] Although we were inexplicably not provided with a copy of her application in either parties' appendix, the Board's counsel confirmed at oral argument the reason stated by Pichardo in her application for leaving her job. Pichardo reported that reason again in her ensuing appeal from the Department's initial determination as discussed below.

she would like to return to work and in response Marain stated "I have to let [her] go." According to Marain, he could not allow her to return because of her dishonesty, which caused him to no longer trust her.

On September 11, 2018, the Department responded to Pichardo's application for unemployment benefits. In its response, the Department indicated to her that she was "disqualified for benefits from [June 17, 2018] and will continue to be disqualified until [she has] worked eight or more weeks in employment and have earned at least ten times [her] weekly benefit rate." According to the notice, the determination was based upon her having left work voluntarily on June 22, 2018, and thereafter she told Marain that she was having medical issues, but when asked about medical documentation, Pichardo

> admitted to the employer on August 14, 2018 [that she was] not having health issues. [Pichardo] stated to the unemployment agent [she] had a major family issue during July and August and upon further inquiry, [she] admitted that was not true, [she] stopped going to work to look for a full-time job.

The notice further stated that her "actions [were] evidence of [her] intention to sever the employer-employee relationship. Therefore, [Pichardo] quit [her] job voluntarily and without good cause attributable to the work."

Pichardo filed an appeal of the initial determination and again stated her reason for leaving work was related to her concerns about her coworker using

A-2085-18T2

marijuana. In response to Pichardo's appeal, the matter was scheduled for a telephonic hearing that was conducted by an Appeals Examiner on October 10, 2018.

At the telephonic hearing, the Appeals Examiner identified the issue to be addressed as whether Pichardo voluntarily left her position with Marain, "without good cause attributable to [her] work." Pichardo, Marain and the co-worker testified at the hearing.

Pichardo admitted again that the information she provided to Marain that she was absent from work due to hospitalization and health issues was untrue except for approximately two days that she was hospitalized. While she was out, she sent Marain texts every day, telling him she was sick, under medical care at a hospital, or that she did not have childcare, but that she would return the next day.

Throughout her testimony, Pichardo explained that she left work because she was concerned about her coworker's alleged use of marijuana and her periodic "mood swings." For that reason, she "quit the job," although she told Marain that the reason she was leaving was because she "was sick" and never told him about the coworker because she believed Marain would not "let [the coworker] go." Pichardo also testified that even at their meeting on August 14,

2018, she did not tell Marain that she wanted to leave her job because of the coworker.

Marain confirmed that at the August 14, 2018 meeting Pichardo wanted to come back to work but, as the Appeals Examiner described in her question to him, he "let her go because . . . of her lying for [the] month she was out." At that point, the Appeals Examiner stopped the proceedings to "add a potential issue into [the] hearing; . . . discharge for misconduct," and explained to the parties that if that was the reason for Pichardo's unemployment, she would be entitled to benefits after six weeks of ineligibility. She then gave the parties an opportunity to postpone the remainder of the hearing so that they could prepare to address the added issue. Both parties declined, and the matter proceeded with Marain confirming that he "discharged" Pichardo on August 14, 2018, denying there was any issue about the coworker using marijuana and testifying that Pichardo never raised the issue with him.

In her testimony, the coworker denied any marijuana use and confirmed that she too received texts every day from Pichardo telling the coworker she was hospitalized. Later, in response to the coworker's suggestion that Pichardo secure medical documentation of her illness and treatment, Pichardo admitted that she was only treated for not more than two days and provided no documents.

6

The coworker also explained that she had loaned money to Pichardo, and when it was not repaid, she reached out to Pichardo's brother to find out about getting back her money, which caused Pichardo to become angry with her.

On redirect, Pichardo confirmed the loan and her need to repay the coworker. She also confirmed the coworker's testimony that she was asked to bring in medical documentation to confirm her absence, but she did not do so.

On October 17, 2018, the Appeals Examiner issued her decision. As noted, the Appeals Examiner found that Pichardo had been employed by Marain, she was absent from work from June 25, 2018 through August 9, 2018, provided Marain with multiple excuses for her absence, and at the August 14, 2018 meeting "she admitted to the employer that she had lied to him about the reason[s] for her absence[]. The employer no longer could trust [Pichardo] and discharged her from her job as of [August 14, 2018]." The Appeals Examiner then explained that N.J.S.A. 43:21-5(a) applied to individuals who left work voluntarily without "good cause attributable to such work." According to the Appeals Examiner, this provision did not apply because Marain discharged Pichardo, therefore she "did not leave the job."

The Appeals Examiner turned to N.J.S.A. 43:21-5(b), which applies to individuals who have "been suspended or discharged for misconduct connected

with the work." The Appeals Examiner determined that Pichardo's dishonesty and "providing false excuses for her absence[] . . . constitute[d] misconduct." She also noted that because of her determination that Pichardo was discharged for misconduct, her decision would "have an impact on the employer's liability for benefit charges against its experience rating account."

Marain filed an appeal from the Appeal Tribunal's determination to the Board on October 24, 2018. The Board issued its final determination on December 10, 2018. In its decision, the Board stated that it carefully examined the findings of facts made by the Appeal Tribunal, concluded that "[o]n the basis of the record below [it] agree[d] with the decision reached," and affirmed the Appeal Tribunal's determination. This appeal followed.

On appeal, Marain contends that the Board abused its discretion by adopting the Appeal Tribunal's incorrect determination that Pichardo separated from her employment because she was terminated for misconduct rather than finding that she abandoned her position when she stayed out of work and provided Marain with false reasons for her absence. We agree.

Our review of decisions by administrative agencies is limited. In re Stallworth, 208 N.J. 182, 194 (2011). For that reason, a party that challenges a final agency decision carries a substantial burden of persuasion. Gloucester Cty.

Welfare Bd. v. N.J. Civil Serv. Comm'n, 93 N.J. 384, 390-91 (1983). "In order to reverse an agency's judgment, an appellate court must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole.'" In re Stallworth, 208 N.J. at 194 (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

"In reviewing a final agency decision, such as that of the Board . . . , we defer to factfindings that are supported by sufficient credible evidence in the record." McClain v. Bd. of Review, 237 N.J. 445, 456 (2019). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for [that of] the agency's even though the court might have reached a different result.'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

In assessing whether the Board acted within the scope of its authority, we consider:

> (1) [W]hether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant facts.

> [Lourdes Med. Ctr. of Burlington Cty. v. Bd. of
> Review, 197 N.J. 339, 360 (2009) (quoting Brady v.
> Bd. of Review, 152 N.J. 197, 211 (1997)).]

When considering those factors, we must defer to the agency's "expertise and superior knowledge of a particular field." In re Carter, 191 N.J. at 483 (quoting Greenwood, 127 N.J. at 513). Furthermore, deference to an agency's decision "is particularly appropriate" when the matter involves the interpretation and application "of the [a]gency's own regulation[s]." R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting I.L. v. N.J. Dep't of Human Servs., 389 N.J. Super. 354, 364 (App. Div. 2006)).

However, "we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" Utley v. Bd. of Review, 194 N.J. 534, 551 (2008) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). "[A]lthough we accord some deference to the Board's interpretation of the statutory scheme that the Legislature has entrusted it to administer, we are not bound by an unreasonable or mistaken interpretation of that scheme, particularly one that is contrary to legislative objectives." McClain, 237 N.J. at 456.

Our decision is also guided by fundamental principles of law governing unemployment compensation. "[T]he Unemployment Compensation Law 'is to

be construed liberally in favor of allowance of benefits.'" Lord v. Bd. of Review, 425 N.J. Super. 187, 195 (App. Div. 2012) (quoting Utley, 194 N.J. at 543). Our State's Unemployment Compensation Law, N.J.S.A. 43:21-1 to 24.30, is primarily designed to lessen the impact of unemployment that befalls workers without their fault. Brady, 152 N.J. at 212. "The public policy behind the Act is to afford protection against the hazards of economic insecurity due to involuntary unemployment." Yardville Supply Co. v. Bd. of Review, 114 N.J. 371, 374 (1989) (emphasis added); see also N.J.S.A. 43:21-2 (declaring public interest in addressing the burden of "[i]nvoluntary unemployment"). Therefore, a person who voluntarily quits or abandons work for personal reasons, rather than for causes attributable to work, is ineligible for benefits.

Applying these principles, we conclude the Board's decision here was not supported by substantial evidence and was based upon an unreasonable interpretation of the law.

N.J.S.A. 43:21-5(a) provides that an individual is disqualified for unemployment compensation benefits where that "individual has left work voluntarily without good cause attributable to such work." In order to avoid disqualification, a claimant must show she left work for "good cause attributable to work." Brady, 152 N.J. at 218. "Good cause means 'cause sufficient to justify

an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed,' and the reasons for terminating employment 'must meet the test of ordinary common sense and prudence.'" Heulitt v. Bd. of Review, 300 N.J. Super. 407, 414 (App. Div. 1997) (quoting Zielenski v. Bd. of Review, 85 N.J. Super. 46, 53-54 (App. Div. 1964)).

Persons who leave work for personal reasons are not eligible for unemployment benefits. Brady, 152 N.J. at 213. Rather,

> the decision to leave employment must be compelled by real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones. . . . [I]t is the employee's responsibility to do what is necessary and reasonable in order to remain employed.
>
> [Domenico v. Bd. of Review, 192 N.J. Super. 284, 288 (App. Div. 1983) (citations omitted).].

Ultimately, "an employee's separation from employment" is voluntary if "the decision whether to go or to stay lay at the time with the worker alone." Lord, 425 N.J. Super. at 191 (quoting Campbell Soup Co. v. Bd. of Review, 13 N.J. 431, 435 (1953)). "[T]he one who initiates that action which eventually leads to the separation is the one who is responsible for breaking the employer-employee relationship." Id. at 190.

An employee who abandons their position is "subject . . . to disqualification for benefits for voluntarily leaving work without good cause

attributable to such work." N.J.A.C. 12:17-9.11(a). The Department's regulation defines abandonment to include "[a]n employee who is absent from work for five or more consecutive workdays and who without good cause fails to notify the employer of the reasons for his or her absence." Ibid.

Unlike abandonment of a position by an employee, termination for misconduct requires that an employee be "suspended or discharged for misconduct connected with the work." N.J.S.A. 43:21-5(b).[2] While termination for abandonment results in disqualification for benefits, discharge for "misconduct" results in a six-week ineligibility period and is charged to the employer's experience rating. Ibid.; see also Lord, 425 N.J. Super. at 195.

---

[2] The statute defines "misconduct" as follows:

> [C]onduct which is improper, intentional, connected with the individual's work, within the individual's control, not a good faith error of judgment or discretion, and is either a deliberate refusal, without good cause, to comply with the employer's lawful and reasonable rules made known to the employee or a deliberate disregard of standards of behavior the employer has a reasonable right to expect, including reasonable safety standards and reasonable standards for a workplace free of drug and substance abuse.
>
> [Ibid.]

Applying the governing law and applicable regulation, we disagree with the Board's interpretation that where an employee admittedly lies to her employer about the reasons for his or her absence, the employee has met his or her obligation to notify the employer under N.J.A.C. 12:17-9.11(a) so as to avoid a finding of abandonment. Clearly, there is no difference between an employee who does not notify the employer of their reason for having been absent for five or more consecutive days and one who repeatedly lies about those reasons.

Moreover, under the circumstances here, where Pichardo actually filed for benefits, claiming other reasons for her separation before Marain allegedly discharged her, we cannot fathom how the Board could ignore that fact and conclude that the employee had not abandoned her position because she later met with Marain to see if he would hire her again.

We find no support for the Board's decision in the fact that the employer told Pichardo he had "to let [her] go." As noted, when Marain said those words, Pichardo had already been absent from work for an extended period and filed for unemployment benefits. At best, Pichardo asked to meet with Marain to see if she could get her job back. When he refused, she continued to pursue her unemployment benefits by appealing the initial determination and arguing that

14

the other employee's alleged marijuana use compelled her to leave her job, which Pichardo admitted she never discussed with Marain.

The purpose of employment is to protect those who are confronted with being "involuntary[ily] unemploy[ed]." Yardville Supply Co., 114 N.J. at 374. To permit Pichardo to receive those benefits, even if delayed as provided for in the case of discharge for misconduct, would be contrary to that policy to "preserve the fund against claims by those not intended to share in its benefits." Ibid.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION