**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2722-18T4

ADALBERTO TEXIDOR,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and GREEN VILLAGE GARDEN
CENTER, INC.,

     Respondents.

_____

Argued telephonically August 25, 2020 –
Decided September 15, 2020

Before Judges Geiger and Mitterhoff.

On appeal from the Board of Review, Department of
Labor, Docket No. 164,948.

Adil Ahmed argued the cause for appellant (Make the Road New
Jersey, attorneys; Adalberto Texidor, pro se, on the briefs).[1]

---

[1] This case was designated pro se at the request of Legal Services of New Jersey. Legal Services assisted with the brief.

Jana R. DiCosmo, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Jana R. DiCosmo, on the brief).

PER CURIAM

In this unemployment benefits matter, Adalberto Texidor appeals from a January 10, 2019 final decision of the Board of Review, New Jersey Department of Labor (the Board), disqualifying him from receiving unemployment benefits under N.J.S.A. 43:21-5(a). The Board's decision was based on its determination that Texidor left work voluntarily without good cause attributable or related to the work. Having reviewed the record and applicable law, we vacate the Board's final decision and remand for a rehearing.

We discern the following facts from the record. Texidor was employed by Green Village Garden Center, Inc. (Green Village), and worked as a full-time laborer beginning on March 4, 2017 and with a contractual end date of November 15, 2017. Green Village participated in the United States Department of Labor's H-2A Temporary Agricultural Program,[2] which provides nine-month temporary work visas for non-United States citizens. Because Texidor is from

---

[2] The H-2A temporary agricultural program allows agricultural employers who anticipate a shortage of domestic workers to bring nonimmigrant foreign workers to the U.S. to perform agricultural labor or services of a temporary or seasonal nature.

Puerto Rico, he did not require a work visa through the program to work in the United States. Nonetheless, Green Village agreed to provide Texidor all employee benefits granted under the program.

On September 6, 2019, Green Village booked a flight for Texidor to return home, with a departure date of October 3, 2017. Texidor filed a claim for unemployment insurance benefits on August 26, 2018. After Green Village disputed the claim, the Deputy Director of the Division of Unemployment and Disability Insurance found Texidor disqualified from receiving benefits from October 1, 2017, under N.J.S.A. 43:21-5(a), because he left work voluntarily without good cause attributable to the work. Texidor appealed that determination to an Appeal Tribunal (Tribunal), and a telephonic hearing was held on November 15, 2018, at which both Texidor and his employer testified. Texidor, who speaks no English, was represented by a non-lawyer advocate from Legal Aid, and he received the services of an interpreter.

At the hearing, the employer claimed Texidor terminated his employment voluntarily, because he was "homesick." On the other hand, Texidor claimed that Green Village had terminated his employment. Under the terms of employment as dictated by the H-2A program, Green Village was to purchase a plane ticket for Texidor to return to Puerto Rico only if the employee completed

the employment contract. Because Green Village purchased a plane ticket for Texidor on September 6, 2017, he took this as an indication that his employment was over. At no point did Texidor affirmatively state that he was "homesick" or that he left voluntarily.

The transcript of the hearing, however, illustrates a great deal of confusion and miscommunication. The term "inaudible" appears 139 times. The interpreter asked for repetition of a statement twenty-two times and verification of a statement eight times; required time to look up words six times; and made interpreting errors that were corrected four times. Throughout the transcript, the parties spoke over the interpreter, and telephone connections were cut off at times.

In a decision dated November 16, 2018, the Appeal Tribunal found Texidor was disqualified from receiving unemployment benefits because he failed to complete the minimum period of the contract, and because homesickness does not qualify as good cause unrelated to the work. On January 10, 2019, the Board affirmed the Tribunal's decision. This appeal ensued.

On appeal, Texidor raises the following points:

> I. THE SEPARATION WAS NOT A VOLUNTARY LEAVING AS A MATTER OF LAW SINCE THE DECISION TO END THE EMPLOYMENT WAS COMPLETED BY THE EMPLOYER POSTING

PAYMENT OF RETURN TRANSPORTATION WHICH SIGNIFIED THE COMPLETION OF THE WORK CONTRACT UNDER THE TERMS OF THE JOB ORDER AND THE REGULATORY FRAMEWORK FOR THE JOB ORDER.

II. SINCE THE END OF THE JOB ORDER CONTRACT WAS APPROACHING, WORK WAS SLOW, AND THE EMPLOYER WAS PAYING FOR RETURN TRANSPORTATION, THE DENIAL OF BENEFITS SHOULD BE REVERSED UNDER THE IMMINENT DISCHARGE REGULATION AND BENEFITS MUST BE AWARDED.

III. APPELLANT TEXIDOR HAD GOOD CAUSE FOR ACCEPTING THE RETURN TRANSPORTATION OF THE EMPLOYER ENDING THE WORK, DUE TO THE WORK SLOW DOWN, AND THE FAILURE TO DISCLOSE THE ACTUAL WORK CIRCUMSTANCES.

Our review of administrative decisions is limited. In re Stallworth, 208 N.J. 182, 194 (2011). We will not reverse an agency's decision unless it is arbitrary, capricious, or unreasonable. Ibid. Agency action is arbitrary, capricious, or unreasonable if the record does not contain substantial, credible evidence to support the findings on which the agency based its decision. Ibid. Additionally, "[w]hen an agency 'overlook[s] or underevaluat[es] . . . crucial evidence,' a reviewing court may set aside the agency's decision." Cottman v. Bd. of Review, 454 N.J. Super. 166, 171 (App. Div. 2018) (alterations in original) (quoting Trantino v. N.J. State Parole Bd., 166 N.J. 113, 192 (2001)).

New Jersey's Unemployment Compensation Law disqualifies a person from receiving unemployment benefits if he or she "left work voluntarily without good cause attributable to such work." N.J.S.A. 43:21-5(a). Thus, the threshold question under N.J.S.A. 43:21-5(a) is whether an applicant for unemployment compensation benefits left his or her job "voluntarily." "The Legislature plainly intended that the reach of the subsection was to be limited to separations where the decision whether to go or to stay was made by the worker alone and, even then, to bar him only if he left his work without good cause." Campbell Soup Co. v. Bd. of Review, 13 N.J. 431, 435 (1953); see also Lord v. Bd. of Review, 425 N.J. Super. 187, 190-91 (App. Div. 2012). Only after the employee is determined to have left voluntarily does the court inquire into whether the employee left for good cause attributable to work. Lord, 425 N.J. Super. at 191 (declining to consider whether the employee had good cause to leave work because it first determined the employee did not leave work voluntarily).

Unfortunately, we find that our resolution of the issues on appeal is hampered because the transcript of the hearing in this matter, at least as to the exchanges between Texidor, the interpreter, and his non-lawyer advocate, raise a substantial doubt whether Texidor understood the questions posed and whether

6

his responses were accurately interpreted. In turn, this raises doubts about Texidor's having had an adequate opportunity to answer the employer's allegations that he returned to Puerto Rico voluntarily because he was homesick. The lack of effective communication between Texidor, the interpreter, and the legal aid representative appears to have impaired Texidor's opportunity to have a fair hearing before the Tribunal. See Alicea v. Bd. of Review, 432 N.J. Super 347, 352 (App. Div. 2013) ("We have repeatedly acknowledged the important role that proper translation into the language of the litigant plays in our legal system.").

We conclude that the appropriate remedy is to vacate the Board's final decision and remand the matter for a rehearing. On remand, the Board shall ensure that the interpreter utilized speaks the same dialect as appellant to avoid similar confusion on rehearing. We express no opinion on which party would prevail based on the limited record before us.

To the extent we have not specifically addressed any of the parties' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

The Board's final decision is vacated, and the matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2722-18T4