**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3221-19

MICHAEL BARNEY,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and TLJ RECYCLING &
CONTAINER SERVICE, LLC,

     Respondents.

_____

Submitted April 14, 2021 – Decided May 12, 2021

Before Judges Fuentes and Rose

On appeal from Board of Review, Department of Labor, Docket No. 203,078.

Karpf, Karpf & Cerutti, PC, attorneys for appellant (Allison A. Barker, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Sookie Bae-Park, Assistant Attorney General, of counsel; Dipti Vaid Dedhia, Deputy Attorney General, on the brief).

PER CURIAM

Claimant Michael Barney appeals from a March 5, 2020 final decision of the Board of Review, disqualifying him from receiving unemployment benefits under N.J.S.A. 43:21-5(a) because he left his employment without good cause attributable to the work. We affirm.

We summarize the facts from the January 30, 2020 hearing before the Appeal Tribunal, at which Barney and his employer's office manager participated. Barney was employed as a truck driver by TLJ Recycling & Container Service, LLC from May 2016 through December 22, 2019. About one month before he left TLJ's employment, Barney told his supervisor he "was dealing with some . . . long term pain in [his] lower back." Barney said he "was thinking about taking off [during the ensuing] winter" to explore different methods of self-treatment, including a ninety-day exercise program. Barney intended "to continue with the company . . . in the spring" but "there was [no] agreed upon date that [he] would return."

Barney acknowledged, however, that he was "[n]ever told by a doctor to take a few months off from the job" or that exercise would improve his condition. He also told the appeals examiner that "as of December 27[,]" he was "physically able to work." But Barney wanted to refrain from driving trucks

2

"for a little bit . . . to see what not driving for a while would do on [his] lower back." He said his condition worsened during the "colder months" but did not recall whether he told his supervisor that the pain increased during that time of year. Barney first sought attention for his lumbar spine pain around 2010; he never filed a disability claim because he was usually able to "work through" the pain.

Although Barney speculated that driving different vehicles could have made his condition worse, Barney did not request an accommodation from his employer. When asked whether he was "aware of any . . . possible accommodation [his] employer could offer," Barney replied: "I did not even look into it. . . . I probably should have. I just didn't want to come off as . . . it was just a personal thing for me. . . . I didn't want to ask for . . . help in a sense." The office manager confirmed Barney did not request an accommodation, adding that there were no non-driving positions at TLJ, and the company could not "guarantee" their drivers were "always gonna be in the same vehicle."

Barney provided a January 28, 2020 report of his chiropractor, which summarized Barney's complaints and the doctor's testing and findings. Absent from the report is any indication that Barney suffered from lower lumbar pain – or any medical condition – that prevented him from continuing his employment.

3

Barney had not provided his employer with such medical documentation before he left the job.

Following the hearing, the Appeal Tribunal issued a written decision on February 3, 2020, affirming the determination of the Deputy Director of Unemployment Insurance that disqualified Barney from receiving unemployment benefits. Citing N.J.A.C. 12:17-9.3, the decision explained that Barney, who argued he left work due to a medical condition, "was not told by a doctor that his condition was caused or aggravated by the job and he was not advised to leave the job." Instead, Barney "left the job because he wanted to take the winter months off to seek alternative treatment methods for his back pain." In reaching its decision, the Appeal Tribunal noted Barney "sought medical care for treatment, but did not file for disability." The decision also noted Barney's "job was not in jeopardy." Accordingly, the Appeal Tribunal concluded Barney was disqualified for benefits under N.J.S.A. 43:21-5(a).

On March 5, 2020, the Board adopted the Appeal Tribunal's decision. This appeal followed.

On appeal, Barney argues the Board's decision "was unreasonable and an error of law as he left work voluntarily with good cause attributable to work." More particularly, Barney contends he "left his job due to a pre-existing health

condition that was aggravated by his working conditions, and the employer was not able to accommodate him, nor were there alternative jobs available."  To support his contentions, Barney relies on his testimony that he suffers from chronic back pain and his statements to his chiropractor relating his ailment.

The scope of our review of an administrative agency's final determination is strictly limited.  Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997).  The agency's decision may not be disturbed unless shown to be arbitrary, capricious, or unreasonable or inconsistent with the applicable law.  Ibid.; In re Warren, 117 N.J. 295, 296 (1989).  "If the Board's factual findings are supported 'by sufficient credible evidence, courts are obliged to accept them.'"  Brady, 152 N.J. at 210 (quoting Self v. Bd. of Rev., 91 N.J. 453, 459 (1982)).  Accordingly, "in reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs."  Ibid. (internal quotation marks omitted).

In our review, we also "give due regard to . . . the agency's expertise where such expertise is a pertinent factor."  Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988) (internal quotation marks omitted).  "However, '[i]n an appeal

from a final agency decision, an appellate court is in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" Melnyk v. Bd. of Educ. of Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020) (quoting Ardan v. Bd. of Rev., 231 N.J. 589, 604 (2018)).

Applying these principles, we find no error in the Board's decision to deny benefits. To avoid disqualification, Barney had the burden of establishing he left work for "good cause attributable to work." Brady, 152 N.J. at 218; see also N.J.S.A. 43:21-5(a) (providing an employee who "has left work voluntarily without good cause attributable to such work" is disqualified for unemployment compensation benefits). "Good cause attributable to such work" is defined in N.J.A.C. 12:17-9.1(b) as "a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment." An employee has left work "voluntarily" within the meaning of the statute "only if 'the decision whether to go or to stay lay at the time with the worker alone.'" Lord v. Bd. of Rev., 425 N.J. Super. 187, 191 (App. Div. 2012) (quoting Campbell Soup Co. v. Bd. of Rev., 13 N.J. 431, 435 (1953)). Accordingly, an employee who quits a job without a sufficient work-related reason is disqualified from receiving benefits. Self, 91 N.J. at 457.

Although a claimant who leaves work for a valid but otherwise personal reason is subject to disqualification, see Morgan v. Bd. of Rev., 77 N.J. Super. 209, 214 (App. Div. 1962), there is a "recognized exception to that rule . . . where an employee is unable to work because of illness and attempts to protect [his] employment." Self, 91 N.J. at 457; see also Ardan, 231 N.J. at 605. Where health prevents an employee from working, it is the employee's obligation to establish through competent medical evidence that a health issue attributable to work forced him to leave employment. See Wojcik v. Bd. of Rev., 58 N.J. 341, 344 (1971); see also N.J.A.C. 12:17-9.3(d) (providing "[w]hen an individual leaves work for health or medical reasons, medical certification shall be required to support a finding of good cause attributable to work.").

Further, when a non-work connected physical condition makes it necessary for an individual to leave work due to an inability to perform the job, the individual shall be disqualified for benefits for voluntarily leaving work, unless the work is medically proven to aggravate the condition. N.J.A.C. 12:17-9.3(b)[1] Therefore, a claimant "is not required to show . . . that [his] illness was

[1] N.J.A.C. 12:17-9.3(b) provides:

> An individual who leaves a job due to a physical and/or mental condition or state of health which does

caused by [his] job or that it prevents [him] from performing the duties of [his] employment. [He] is only required to show that the environment at [his] job aggravated [his] illness or will impair [his] continued recovery." Israel v. Bally's Park Place, Inc., 283 N.J. Super. 1, 5 (App. Div. 1995). "[He can meet] that standard by showing, through uncontroverted medical evidence, that [his condition] has been and will be aggravated by the [work] environment." Ibid. The claimant is required to establish an aggravation by supplying a medical certification supporting the claim that the work aggravated the condition. N.J.A.C. 12:17-9.3(d); see also Israel, 283 N.J. Super. at 5.

In addition to establishing that he suffers from the aggravation of a medical condition, the claimant must prove "at the time of the claimant's departure, either the employer had no position available that would

_____

not have a work-connected origin but is aggravated by working conditions will not be disqualified for benefits for voluntarily leaving work without good cause "attributable to such work," provided there was no other suitable work available which the individual could have performed within the limits of the disability. When a non-work connected physical and/or mental condition makes it necessary for an individual to leave work due to an inability to perform the job, the individual shall be disqualified for benefits for voluntarily leaving work.

accommodate the claimant's condition or the claimant would not have been assigned to any such position." Ardan v. Bd. of Rev., 231 N.J. 589, 607 (2018).

In Ardan, the Court held an employee is not always required to notify the employer of his medical condition before leaving a position as permitted by N.J.A.C. 12:17-9.3(b), and may not be required in every case to inquire as to whether the employer will accommodate the limitations imposed on the employee by that condition. Id. at 605. The Court nonetheless determined the Board "properly found that Ardan failed to meet her burden to demonstrate her case [wa]s within the exception prescribed by N.J.A.C. 12:17-9.3(b)." Id. at 608. In reaching its decision, the Court noted the record did not support the claimant's "conclusory assertion that any effort to secure a reassignment to 'suitable work' at [her job] would have proven futile." Id. at 607. Notably, Ardan's medical records "indicat[ed] her condition was permanent and her pain made it difficult for her to do her job." Id. at 597.

Conversely, in the present matter, Barney failed to offer any competent medical evidence that established his lumbar pain prevented him from performing his work. Nor did Barney produce any medical evidence that his work caused his or aggravated his back pain. Rather, Barney testified he was "physically able to work" on the day he left TLJ's employment. Barney's

9

reliance on his complaints as reflected in his chiropractor's medical reports falls far short of meeting that burden. Without competent medical evidence, Barney failed to meet his burden. See N.J.A.C. 12:17-9.3(d).

Moreover, Barney acknowledged he did not seek an accommodation from TLJ or provide any medical documentation that would support his belated argument that he placed his employer "on notice" he was seeking an accommodation for a disability. We reject Barney's speculative argument that "TLJ could not accommodate . . . [him] by ensuring he only drove one of the newer, more proportionate trucks that were better on his lumbar spine." TLJ's office manager only generally testified the company could not "guarantee" that a particular vehicle "always" would be available. But Barney never made that request. Similar to the claimant in Ardan, Barney did not establish that his "conclusory assertion" that a request for another assignment "would have proven futile." 231 N.J. at 607. Indeed, Barney did not even attempt to determine what those other opportunities were.

We therefore conclude the Board's decision was not arbitrary, capricious or unreasonable as there was no medical evidence to support Barney's contentions, and he failed to otherwise meet his burden to establish there was no other work available for him.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3221-19